31 C.C.P.A.(Patents)

In re MONTGOMERY et al.

Patent Appeal No. 4888.

Court of Customs and Patent Appeals.

April 4, 1944.

Mitchell & Bechert, of New York City (Martin T. Fisher, of Washington, D. C., and Fred J. Bechert, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 2, 3, 4, 5, 7, 9, 10, and 11 of appellants' application for a patent. Three claims were allowed, and four claims, 13 to 16, inclusive, were rejected by the examiner upon the ground of estoppel. The board also affirmed the examiner's decision with respect to these rejected claims, but appellants did not include them in their appeal, so they are not before us.

The claims involved in this appeal were rejected as lacking patentability over the cited prior art.

Claims 2 and 10 are illustrative and read as follows:

"2. In a machine of the character indicated, a spindle, a chuck actuator carried thereby, chucking means including a pair of opposed chucking abutments carried by said chuck actuator and spindle, and a spring compensating means interposed between said abutments, said compensating means including a divided ring member comprising segments surrounding said chuck actuator, whereby said divided ring-member may be opened and removed from said spindle in a direction lateral thereof."

"10. In a machine of the character indicated, a frame, a spindle supported therefrom, a chuck actuator carried by said spindle, means for actuating said chuck actuator, including a pair of chucking abutments, one of said abutments being adjustable, and means carried by said frame and cooperable with said adjustable

abutment, said last mentioned means including a manually operable means located at a readily accessible point remote from said adjustable abutment, for adjusting the same."

Appellant's application involves two alleged inventions so closely related that division was not required by the examiner. The subject matter relates to machine tools. Claims 2 to 5 embrace one of the alleged inventions, and claims 7, 9, 10, and 11 embrace the other alleged related invention.

The structure involved is quite complicated and cannot be well described without reference to the drawings of the application. We, therefore, attach hereto copies of such of the drawings as are necessary for an understanding of the subject matter involved.

No. 4888   PATENT APPEAL DOCKET

INVENTORS
DONALD H. MONTGOMERY
ARTHUR H. JOBERT
BY
ATTORNEYS

The examiner, in his "Statement" on appeal, concisely described the subject matter before us as follows: (The numerals refer to the attached drawings.)

"These claims are drawn to features of a chuck actuating means for use with a collet type chuck. The actuator structure is typified by that shown in the left hand portion of Fig. 2.

"A sleeve 220 which actuates the collet 218 is provided with screw threads upon its outward end. Threaded thereon is an abutment collar 303 which can be adjusted axially along the thread. A lock nut 305, also threaded to the sleeve, is provided with a flange 306 overhanging the abutment collar and a helical slot 307 of the same pitch as the screw threads is formed therein to receive the pin 308 in the abutment collar. By means of gear teeth on the collar and lock nut, remote controlled means 316 may be selectively engaged with the same to first loosen the lock nut, move the abutment along the actuator sleeve, and then tighten the lock nut.

"Spaced axially from the abutment collar is another abutment 299 to which chucking and unchucking motion is imparted. The motion of this latter abutment is transmitted to the first mentioned abutment through a compensator generally indicated by reference character 304."

The examiner then described the spring compensator and its functions which are not material with respect to the questions before us. He concluded his description with the following statement:

"By making the compensator in segments the same can be removed laterally without dismantling the entire structure."

The references cited are: Muehlmatt, 985,536, February 28, 1911; Drissner, 1,-465,257, August 21, 1923; Montgomery, 2,153,971, April 11, 1939.

We do not deem it necessary, at this point, to describe the disclosures of the references except to say that their general subject matter is the same as that here involved. So far as these patents are relevant to the questions before us they will be referred to in our consideration of the claims.

The claims will be considered in two groups, the first group consisting of claims 2 to 5, inclusive, and the second group claims 7, 9, 10, and 11.

With respect to the first group of claims, the examiner stated:

"Claims 2 and 3 stand rejected as unpatentable over each of the patents to Montgomery and Drissner. Each of these patents shows the organization called for in these claims including a spring compensator between two abutments, except that the compensator is not made in segments. It is contended, however, that to make the same in two or more segments, secured together, does not constitute invention and amounts to nothing more than the exercise of a common expediency. In various arts where it is desired to remove ring members, casings, bearings, etc., from a pipe or shaft it is common practice to split the parts into two or more segments and provide some fastening means for holding the segment[s] together when assembled. To apply such an expediency to the compensator of the prior art would be obvious even to one with only a limited mechanical knowledge and would produce only expected functions and results.

"Claims 4 and 5 stand rejected as unpatentable over Drissner for the same reasons as set out in the foregoing paragraph. The specific compensator structure called for in these claims, including pins and surrounding springs, is shown by Drissner. Again, to make this structure in two segments to be removable from the machine laterally is not considered to constitute invention."

The Board of Appeals, in its decision, stated:

"Claims 2, 3, 4, and 5 stand rejected as unpatentable over the patents to Montgomery and Drissner. Claims 2 and 3 are intended to present patentability by use of a divided ring member comprising segments surrounding a chuck actuator especially when a spring compensating means is interposed between the chucking abutments. Appellants urge that Drissner does not even suggest a spring compensator for a chuck nor making it in segments and Montgomery shows as a spring compensator a stiff spring ring or washer 17. While this may be true, we believe the Examiner is warranted in his holding of lack of invention to use a split ring in segments for holding certain parts on a driving spindle so that the parts can be gotten at readily for repair and removal. For reasons discussed more fully by the Examiner, we believe this ground of rejection should stand."

It will be observed that it appears from the examiner's statement that he rejected

claims 2 and 3 upon Montgomery, and claims 4 and 5 upon Drissner alone. The board, however, without directly so stating, held, in effect, that claims 4 and 5 were unpatentable upon Drissner in view of Montgomery. Appellants' reasons of appeal assume such to be the fact, and appellants, in their brief, make no contention to the contrary.

Appellants, in their brief, admit that Montgomery discloses a spring compensator for a collet or chuck placed between two abutments, as recited in the involved claims. Montgomery's compensator, however, is not composed of segments, and it is this element in the first group of claims which appellants contend renders them patentable. They point out the great advantage in such construction which enables one compensator to be changed for another or removed for repairs without practically dismantling the entire chucking mechanism. The examiner admitted that this feature is not shown in any of the references, but he stated, as hereinbefore quoted, that in various arts where it is desired to remove ring members from a shaft, "it is common practice to split the parts into two or more segments and provide some fastening means for holding the segment[s] together when assembled," and that to apply such an expediency to the spring compensator disclosed by Montgomery would be obvious to one skilled in the art.

Appellants, in their brief, do not challenge the statement of the examiner that in the various arts where it is desirable to remove a ring member from a pipe or shaft, it is common practice to make the ring member in segments and provide fastening means for holding the segments together, but they contend that it has been the universal practice to make spring compensators for collets integral, necessitating the dismantling of the chuck mechanism whenever it became necessary to renew the spring compensator.

In the first place, there is nothing in the record relative to what the universal practice has been regarding spring compensators, nor is it suggested by appellants why, if it became necessary to remove the spring compensator, it would not readily occur to one skilled in the art that the compensator could be made in segments following the common practice where it is necessary to remove ring members from shafts or pipes.

In view of the foregoing, we are unable to find that the Patent Office tribunals erred in their holding that the making of the spring compensator in segments for the purpose stated would be obvious to one skilled in the art, and consequently the rejection of the claims in this group must be approved.

Appellants claim the examiner was inconsistent in allowing claim 1 and rejecting claims 2 to 5, and assert that if claim 1 is patentable claims 2 to 5 are also patentable.

We have so frequently ruled that patentability of rejected claims cannot be determined by consideration of allowed claims that citation of authority to that effect is unnecessary.

We come now to the consideration of the second group of claims—7, 9, 10, and 11.

The examiner rejected claims 7, 9, and 10 upon the patent to Muehlmatt alone, and claim 11 upon Montgomery in view of Muehlmatt.

The subject matter of these claims relates to an adjustment means for the collet or chuck indicated by the numerals 314, 315, 316, and 317 of the drawings. Claim 11 differs from 7, 9, and 10 in that it includes compensator means between abutments which are disclosed in Montgomery but not in Muehlmatt.

With respect to this group of claims, the decision of the board states:

"Claims 7, 9, 10 and 11 stand rejected on Muehlmatt. Appellant urges this patent shows an ordinary collet with a handle D for actuating the chucking fingers to move the abutment members relative to the spindle and that the adjustment of the collet may be effected by turning the collet tube by means of the handle P directly thereon. The claims differentiate by reciting an actuating member actuable from a point remote from the chucking abutment but we do not consider that this broad distinction is patentable. The element P in the Muehlmatt patent might be positioned quite a distance from the chucking elements if thought desirable.

"Claim 10 recites the manual operating means remote from the adjustable abutment and associated with means carried by the frame for operating the same. We consider this claim is too broadly expressed but we are not inclined to hold with the Examiner that an operator stand-

ing on the frame could be read into the claim as such means.

"Claim 11, which recites a manual removable shaft supported by the frame for removing one of the abutments is also not patentable for the reasons given by the Examiner.

"It is our view that the appealed claims are directed broadly to features of the mechanism not sufficiently distinguished from the prior art to present patentable merit."

We would observe that here, again, the board inaccurately stated the ground of rejection by the examiner of claim 11. This claim, as hereinbefore stated, was not rejected upon Muehlmatt alone, but upon Montgomery in view of Muehlmatt.

What is termed a handle in the above quotation, referring to the letter P in the reference, is described in the patent as a "handwheel" and is so shown in the drawings. It is not carried by the frame of the machine, but is attached to the collet tube.

In view of the fact that appellants, in their brief, concede that Muehlmatt discloses all of the elements of these claims except the means 314, 315, and 316 shown on appellants' drawings hereto attached, and means 317 located at a remote point for adjusting the collet, it is unnecessary for us to further discuss the Muehlmatt patent.

Appellants' brief states:

"The vital limitation in each of the above claims is the limitation of a shaft or other means carried by the frame of the machine and having means cooperable with an adjusting nut or abutment, together with remote actuating means for actuating the shaft so as to adjust the collet. As has been pointed out, the actuating handle 317, located in a fully accessible place and remote from all of the congestion of the normal collet adjusting nuts, offers an easy and quick method of collet adjustment. A machine operator welcomes such an adjusting device which saves such a vast amount of time and labor.

\*      \*      \*      \*      \*

"In addition to everything shown by Muehlmatt on Montgomery, the appellants have provided the shaft 314 carried by the frame of the machine and having means such as a handle 317 located at a remote point to facilitate adjustment of the collet. None of the references even suggests any means carried by the frame of the machine for adjusting the collet."

Therefore, the only question upon this branch of the case is whether the above-named elements lacking in Muehlmatt render the claims patentable.

We are unable to see wherein the element in the claims "carried by the frame of the machine" is material in determining the patentability of the claims. This feature was not discussed by either of the Patent Office tribunals, except that the examiner held that the claims are broad enough to read on Muehlmatt's device with the operator of the machine standing on the frame and turning the hand wheel either with his hand or through the medium of a wrench. The board, in its decision, properly disagreed with this suggestion.

While the element "means carried by the frame" might involve patentability of some claims that might have been made under appellants' disclosure, we find nothing in the record that makes this element important in the claims before us, and appellants have not suggested any reason why it lends patentability to the claims. Were this an interference proceeding between appellants' application and the Muehlmatt patent, where every element of a claim is deemed material, the failure of Muehlmatt to disclose the element would be determinative of his right to make the claim, but in this ex parte proceeding, the element cannot affect patentability of the claims unless it contributes in some way to the invention claimed.

So far as the claims before us are concerned it appears to be immaterial, in passing upon their patentability, whether the means for adjustment are carried on the frame, as disclosed by appellants, or on some portion of the mechanism, as shown in Muehlmatt.

With respect to the element of the claims providing for remote control of the actuating means for adjustment, the examiner said:

"In the first place, the provision of a remote control means broadly for actuating the handwheel of Muehlmatt, even to the extent of using a shaft in the same is not considered to amount to invention.

"Such a means is common in many mechanical installations and its use here would produce no different function or result than would be expected."

As will be noted from our quotation from the decision of the board, it was of the opinion that this element does not render the claims containing the same patentable, and it expressed the opinion that the hand wheel of the Muehlmatt patent could, if thought desirable, be positioned at a distance from the chucking element.

The examiner's statement that the use of a shaft to effect remote control is common in many installations, and its use in appellants' device would produce no different function or result than would be expected, is not challenged in the record.

It appears to us that while appellants' device is an improvement over the art of record, such improvement involved merely mechanical skill, and we are in agreement with the board that the features embraced in the claims are not sufficiently distinguished from the prior art to present patentable merit.

The decision appealed from is affirmed.

Affirmed.

GARRETT, P. J., did not participate in the consideration or decision of this case.