STATE of Wisconsin and City of Milwaukee, Plaintiffs-Respondents,

v.

Dale PULTZ, Appellant-Petitioner,

MISSIONARIES TO THE PREBORN, et al., Defendants.

Supreme Court

*No. 94–2806. Oral argument September 25, 1996.—Decided December 20, 1996.*

(Also reported in 556 N.W.2d 708.)

For the appellant-petitioner there were briefs and oral argument by *Kenneth M. Fleck*, Grafton.

For the plaintiffs-respondents the cause was argued by *Laura Sutherland*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general and *Grant F. Langley*, city attorney and *David R. Halbrooks*, assistant city attorney.

JANINE P. GESKE, J. Petitioner Dale Pultz (Pultz) seeks review of a court of appeals decision affirming a remedial contempt order of the circuit court

for Milwaukee County, Judge Robert W. Landry.[1] The circuit court found Pultz in contempt for his violation of a permanent injunction enjoining him and others from engaging in particular activities at Milwaukee medical clinics. The questions presented are these: was the circuit court constitutionally required to inform the defendant that, if indigent, he had a right to appointed counsel at public expense in this remedial contempt proceeding brought by the State of Wisconsin and the City of Milwaukee, and was the notice of the original contempt hearing adequate to notify Pultz of the adjourned contempt hearing.[2] We hold that due process required the circuit court to advise Pultz of his right to appointed counsel at public expense if he could not afford counsel. Because our holding requires that we remand for a new hearing on the contempt motion, we need not address the adequacy of notice issue. We therefore reverse the order of the circuit court finding contempt and remand to the circuit court for a new hearing on the contempt motion.

[1] *State v. Pultz*, No. 94-2806, unpublished slip op. at 6 (Ct. App. Oct. 3, 1995).

Historically, contempt was referred to as "civil" or "criminal" contempt. Chapter 257, laws of 1979, repealed and recreated ch. 785 of the Wisconsin Statutes, which now refers to contempt proceedings that may result in either "remedial" or "punitive" sanction(s). We treat the question presented here as involving a remedial contempt sanction, given that none of the parties assert that this case involves a punitive sanction.

[2] In the court of appeals, Pultz presented two other questions: whether the sentence imposed exceeded the circuit court's authority, and whether the circuit court failed to obey an appellate order. We granted review on the two issues raised in Pultz' petition for review.

115

## FACTS

On August 22, 1994, Dale Pultz was personally served with a notice of motion and motion for contempt, pursuant to Wis. Stat. § 785.03(1),[3] based on four separate alleged violations of a permanent injunction order dated December 10, 1992. The contempt hearing date was set for August 31, 1994, at 9:00 a.m. Between the time Pultz was served with the notice of motion and the date of the scheduled hearing, Pultz was arrested on outstanding municipal warrants unrelated to the December 10, 1992 permanent injunction order.[4] Upon his arrest on August 26, 1994, Pultz was confined to the Milwaukee County House of Correction.

Pultz remained incarcerated and did not appear for the August 31, 1994 contempt hearing. The circuit court adjourned the contempt hearing until September 7, 1994 at 9:00 a.m. Pultz remained incarcerated and so did not appear at the scheduled time for the September 7, 1994 hearing. The circuit court was then informed that Pultz was being held in the House of Correction. Accordingly, the court adjourned the motion hearing until 1:30 p.m. that afternoon and ordered the Milwaukee County Sheriff's Department to produce Pultz from the House of Correction.

Pultz appeared in court later on September 7, 1994, but without counsel. Pultz objected to the contempt hearing taking place on the grounds that he desired, but did not have a chance, to obtain a lawyer,

---

[3] Unless otherwise indicated, all references in this opinion are to the 1993-94 Wisconsin Statutes.

[4] The basis for the municipal warrants is not in the record before us, and in any event is not germane to our decision on the issue of right to appointed counsel.

116

# and that he was not properly notified of the hearing.[5]

[5] The pertinent dialogue between the circuit court and Mr. Pultz follows:

The Court: Seated at the table to my left, you are Dale Pultz. Are you represented by counsel? Do you have an attorney?

Mr. Pultz: No. I have not had a chance to get it. I was issued a copy of this contempt thing four days before I was picked up from court and I did not have time to seek counsel as of yet. I had a friend do some motions, but I didn't get a chance to submit them as I was taken from court that Friday on a supposed municipal commitment.

. . .

The Court: What was the date? What was that date?

Mr. Pultz: That was August 26th. I would like to say that I have not had a chance to seek proper counsel and I have no, very few statements to make before I do get the chance, before I see proper counsel. . . .

Mr. Halbrooks: He was served August 22nd. We filed that affidavit with the court. He's had plenty of time, both before that time and since that time to have contacted a lawyer. He, the order in this case allows for 72 hours to be proper notice. So he even had more time than that before he went to the House of Correction.

Additionally, the Court may inquire of the defendant the number of times he's been in court and any knowledge. He's never been represented by counsel on any civil matters. So, I'm not certain how much stock to put in that from the perspective of his desiring of counsel at this point. . . .

The Court: With respect to an attorney, it would appear there is no prohibition, no impediment that Mr. Pultz, with respect to contacting an attorney, except for the fact that he was in custody of the Sheriff's Department and held in custody since, it's not clear exactly when.

Mr. Pultz: 26th.

The Court: But at the time of notice and he would be under no impediment to use a telephone to make such contact.

It is perfectly proper for a person who is in custody to obtain leave from such contact. Seems willful action on his part to choose and he elects not to retain counsel.

This is a civil case. It's not a criminal proceeding and as a matter of law, the defendant is not necessarily required to have an attorney, or the court is not required to appoint an attorney for him, in the event that he is indigent.

In response, the Assistant City Attorney told the court that the court clerk did not have Pultz' current address and, therefore, had been unable to notify him of the adjournment. Despite Pultz' objections, the hearing proceeded.

At the close of the hearing, the circuit court found Pultz in contempt of the permanent injunction order. As a sanction for the four injunction violations, Pultz was given the option to pay a $9,500.00 aggregate forfeiture or take an oath that he would not violate the permanent injunction. If Pultz refused to pay the forfeiture or take the oath within five days, he would be jailed for a total of 380 days at the House of Correction. As a further provision, Pultz was given the opportunity to purge the contempt order and avoid the balance of his incarceration at any time by agreeing not to violate the permanent injunction.

Pultz refused to take the oath and failed to pay the forfeiture. After the five days passed, the circuit court issued a writ of commitment and Pultz was taken into custody.

The court of appeals affirmed the circuit court's finding of contempt. The court of appeals agreed with the circuit court's ruling that Pultz had sufficient time to hire an attorney between the time he was served on August 22, 1994 and the time of the contempt hearing on September 7, 1994. The appellate court determined that the circuit court did not unconstitutionally fail to advise Pultz of his right to appointed counsel. The court of appeals also concluded that Pultz' due process right to notice was not violated because on August 22, 1994 he was effectively served with notice of the August 31, 1994 adjournment. The court of appeals

---

There is be (sic) no claim of indigency here. There is just a claim of insufficient time.

acknowledged that it would have been preferable to have served Pultz with the notice of adjournment, and if he had shown up on August 31, 1994, Pultz would have been notified of the adjournment. Pultz failed to notify the circuit court of his inability to attend the originally scheduled hearing. The court of appeals ruled that Pultz was effectively served on August 22, 1994.

## DUE PROCESS

The constitutional due process right to appointed counsel for an indigent defendant in a state initiated contempt proceeding is the primary issue before us.[6] The applicability of a constitutional right is a question of law that we review independently of the lower courts. *State v. Turner*, 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987). Questions of constitutional fact are also subject to independent review, and require independent application of the constitutional principles involved to facts as found by the trial court. *Id.*

This action arose from a motion brought jointly by the State of Wisconsin and the City of Milwaukee. The plaintiffs moved for a remedial contempt hearing against Pultz based on Wis. Stat. § 785.03(1).[7] They

---

[6] **U. S. CONST. amend. XIV, sec. 1** provides in part: "No State shall. . .deprive any person of life, liberty, or property, without due process of law".

[7] **Wis. Stat. § 785.03 Procedure. (1)** NONSUMMARY PROCEDURE.

(a) *Remedial sanction.* A person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.

(b) *Punitive sanction.* The district attorney of a county, the attorney general or a special prosecutor appointed by the court may

alleged that Pultz violated a permanent injunction order entered more than one year earlier. Our statutes provide sanctions for a contempt of court stemming from "disobedience, resistance or obstruction of the authority, process or order of a court." Wis. Stat. § 785.01(1)(b) (1993-94). The statutes also provide for a variety of remedial sanctions.[8] A person aggrieved by a contempt of court may seek imposition of a remedial sanction, and an agent of the state may seek imposition

seek the imposition of a punitive sanction by issuing a complaint charging a person with contempt of court and reciting the sanction sought to be imposed. The district attorney, attorney general or special prosecutor may issue the complaint on his or her own initiative or on the request of a party to an action or proceeding in a court or of the judge presiding in an action or proceeding. The complaint shall be processed under chs. 967 to 973. If the contempt alleged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial of the contempt unless the person charged consents to the judge presiding at the trial.

[8] **Wis. Stat. § 785.04(1) Remedial sanction.** A court may impose one or more of the following remedial sanctions:

(a) Payment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court.

(b) Imprisonment if the contempt of court is of a type included in s.785.01(1)(b),(bm),(c) or (d). The imprisonment may extend only so long as the person is committing the contempt of court or 6 months, whichever is the shorter period.

(c) A forfeiture not to exceed $2,000 for each day the contempt of court continues.

(d) An order designed to ensure compliance with a prior order of the court.

(e) A sanction other than the sanctions specified in pars. (a) to (d) if it expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court.

(2) **Punitive Sanction.** (a) Nonsummary procedure. A court, after a finding of contempt of court in a nonsummary procedure under s.785.03(1)(b), may impose for each separate contempt of court a fine of not more than $5,000 or imprisonment in the county jail for not more than one year or both.

of a punitive sanction. Whether the sanctions sought are deemed remedial or punitive, they both may include incarceration of the alleged contemnor.

Pultz asserts that, under decisions of both the United States Supreme Court and this court, indigent civil litigants are entitled to the assistance of appointed counsel when they face the prospect of incarceration. Pultz argues that the circuit court failed to make several necessary inquiries before continuing with the contempt hearing. First, the circuit court did not advise Pultz of his right to counsel; second, the circuit court did not determine whether Pultz knowingly and voluntarily waived his right to counsel; third, the circuit court made no inquiry as to Pultz' indigency status; and fourth, the circuit court did not inform Pultz that if he were indigent, the court would appoint counsel for him at public expense.

Pultz asks us to reaffirm the rule established in *Ferris v. State*, 75 Wis. 2d 542, 249 N.W.2d 789 (1977) and *Brotzman v. Brotzman*, 91 Wis. 2d 335, 283 N.W.2d 600 (Ct. App. 1979) that when an unrepresented litigant comes before the court on a civil or remedial contempt motion brought by the State, and his or her liberty is threatened, the court must inform the defendant of the right to appointed counsel if he or she cannot afford one.

The State acknowledges that the due process right to appointed counsel under the Fourteenth Amendment was extended by *Argersinger v. Hamlin*, 407 U.S. 25, 30-31 (1972) to all state prosecutions that result in imprisonment. The State also recognizes that it is not the type of proceeding, whether punitive or remedial, that determines whether due process requires a right

121

to appointed counsel. *In Re Gault*, 387 U.S. 1, 36 (1967).

The Supreme Court has recognized a limitation on the right to appointed counsel in civil actions. In *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), the Court refused to recognize an absolute right to appointed counsel in civil proceedings. There, the Court concluded that a parolee or probationer had only a conditional liberty interest at stake, dependent upon the observance of special parole restrictions. 411 U.S. at 788-89. Several years later the Court enunciated a sliding scale to measure the nature of the threat to a defendant's physical liberty, and thereby assess the need for appointed counsel. *Lassiter v. Department of Social Servs. of Durham County*, 452 U.S. 18, 26 (1981). The Court observed that as the civil defendant's risk of incarceration diminishes, so does his or her right to appointed counsel. *Lassiter*, 452 U.S. at 26.

The *Lassiter* Court held that the Constitution does not require the appointment of counsel for indigent parents in every parental status termination proceeding. Instead, the Court ruled that an indigent litigant is presumed to have a right to appointed counsel only when a loss on the merits would deprive him or her of personal liberty. 452 U.S. at 26-27. Set against that presumption are the three elements from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), namely, the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. *Lassiter*, 452 U.S. at 27.

The State cites these Supreme Court cases, and additional authority from other jurisdictions, to urge us to at most, adopt a case-by-case balancing approach in this case. We decline to do so. Because in this remedial contempt hearing Pultz' liberty was threatened at

the instance of the State and the City in the exercise of their police power, we rely on the rule of our earlier decision in *Ferris*.

█

In *Ferris*, the Department of Natural Resources sought to enforce an order for cleanup of a salvage yard. When the salvage yard owner failed to comply with a court order to remove salvage from his yard, he was found in contempt. *Ferris*, 75 Wis. 2d at 544. Nothing in the record indicated that the salvage yard owner had requested the assistance of counsel or that it was offered. *Id.* The salvage yard owner began serving an indeterminate period in jail after failing to meet the court's deadline for compliance. The circuit court granted a writ of habeas corpus, and discharged the salvage yard owner after he had been held in jail for 37 days. *Id.* at 544-45. We held that "where the state in the exercise of its police power brings its power to bear on an individual through the use of civil contempt as here and liberty is threatened, we hold that such a person is entitled to counsel." *Id.* at 546. In other words, we established the rule that, when an arm of government brings a motion for a remedial contempt hearing against an individual, and that person's liberty is threatened, "absent a knowing and intelligent waiver of counsel, the court, prior to the hearing on contempt, must advise the alleged contemnor of his right to counsel and advise him that if he is indigent, the court will appoint counsel for him at public expense." This same rule applies here, where the motion for contempt was filed by two governmental bodies, the State of Wisconsin and the City of Milwaukee.

The court of appeals held that an indigent defendant was entitled to court-appointed counsel in a civil

contempt action initiated by the district attorney. *Brotzman v. Brotzman*, 91 Wis. 2d 335, 339, 283 N.W.2d 600 (Ct. App. 1979) (considering action brought under former civil contempt statute, Wis. Stat. § 295 (1977)). There, the court of appeals concluded that the distinction between coercive imprisonment and punitive imprisonment was immaterial to deciding whether an indigent defendant in a civil contempt proceeding was entitled to court-appointed counsel when the state commenced the action. 91 Wis. 2d at 339. The touchstone was that it was the State, the real party in interest in an action to recover child support payments, that brought the action threatening the defendant's liberty. *Id.* at 339. The *Brotzman* court held that in such circumstances the circuit court should have informed the defendant of his right to counsel, and of the availability of counsel furnished at public expense. *Id.*; Wis. Stat. § 967.06.[9]

The State asserts that the *Ferris* rule is superseded by the United States Supreme Court's holding in *Lassiter*, and should be abandoned. The *Lassiter* Court ruled that an indigent litigant is presumed to have a right to appointed counsel only when a loss on the merits would deprive him or her of personal liberty.

[9] **967.06 Determination of indigency; appointment of counsel; preparation of record.** As soon as practicable after a person has been detained or arrested in connection with any offense which is punishable by incarceration, or in connection with any civil commitment proceeding, or in any other situation in which a person is entitled to counsel regardless of ability to pay under the constitution or laws of the United States or this state, the person shall be informed of his or her right to counsel. Persons who indicate at any time that they wish to be represented by a lawyer, and who claim that they are not able to pay in full for a lawyer's services, shall immediately be permitted to contact the authority for indigency determinations specified under s. 977.07 (1).

452 U.S. at 26-27. The State contends that we must balance that presumption against the three elements evaluated in *Lassiter*. Those elements are the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. 452 U.S. at 27.

Under the State's proposed balancing approach, the State first asserts that we would find that Pultz' liberty interest was diminished by the terms of his contempt sanction. Because Pultz held the "keys to the jail" in his hand, either by taking an oath or paying the forfeiture, the threat to his liberty was not direct. *See State v. King*, 82 Wis. 2d 124, 126-30, 262 N.W.2d 80 (1978) (applying earlier civil contempt statutes, ch. 295 and Wis. Stat. §§ 256.03 through 256.07 to a proceeding against union members alleged to have violated a temporary injunction to refrain from picketing and return to work). Second, the State asserts that the government's interest in avoiding a blanket rule is significant, primarily based on avoiding undue delay and economic and administrative burdens. Third, the State contends that the risk to Pultz of an erroneous deprivation of his liberty by virtue of proceeding without appointed counsel was not insupportably high. The State points out that no expert testimony was offered at the contempt hearing, and asserts that the case presented only "straight forward factual issues." Respondents' brief at 20. The State relies most heavily, however, on testimony and findings from a hearing several months after Pultz was incarcerated for this contempt, to assert that the risk of erroneous deprivation of liberty was slight.

We decline to undertake a balancing here like that conducted by the *Lassiter* Court. Contrary to the State's assertion, Pultz' opportunity to purge is of no

125

consequence in our decision to cast *Ferris* as a bright line rule.[10] The point is that the jail loomed before Pultz, and his decision whether or not to "use the keys" was made without counsel.[11] Affording counsel after a

[10] While not engaging in a balancing of interests, we note several other flaws in the State's argument. There are already mechanisms in place to prevent undue delay of the contempt hearing. For instance, Wis. Stat. §§ 967.06, 977.02 and 977.07 together provide for a prompt determination of indigency and appointment of a public defender. Wis. Stat. § 977.07(1)(a) provides, "Determination of indigency for persons entitled to counsel shall be made as soon as possible and shall be in accordance with the rules promulgated by the board under s. 977.02 (3)." Similarly, the circuit court has inherent power to appoint counsel for indigent defendants at public expense. *Contempt in State v. Lehman*, 137 Wis. 2d 65, 76, 403 N.W.2d 438 (1987); *Joni B. v. State*, 202 Wis. 2d 1, 10-11, 549 N.W.2d 411 (1996). In addition, we note that Pultz was served with notice of the contempt hearing in August, 1994, for four incidents occurring on January 24, 1994, April 23, 1994, May 11, 1994 and June 20, 1994. The permanent injunction had been in effect since December, 1992. If there was delay here, it was delay by the State in enforcing the injunction in the face of violations as far back as eight months before notice was served. Finally, the State relies on testimony and findings from a hearing several months after Pultz, without the benefit of appointed counsel, was found in contempt. Those later findings are irrelevant to Pultz' right to appointed counsel at the September 7, 1994 hearing.

[11] To continue the analogy, an indigent defendant may not even "have the keys" if he is not presently able to comply with the forfeiture requirement. *Mead v. Batchlor*, 460 N.W.2d 493, 501-02 (Mich. 1990) (citing *Walker v. McLain*, 768 F.2d 1181, 1183 (10th Cir. 1985), *cert. denied*, 474 U.S. 1061 (1986)). *See also McBride v. McBride*, 431 S.E.2d 14, 18-19 (N.C. 1993) noting that trial courts do not always make a determination as to whether the contemnor is presently able to comply with a court ordered forfeiture. Nothing in the record before us indicates

defendant is found in contempt is too late. As even the Lassiter Court observed, "accurate and just results are most likely to be obtained through the equal contest of opposed interests." 452 U.S. at 28.

We have applied the *Lassiter* balancing test on several occasions since our decision in *Ferris*. We addressed the due process right to appointed counsel for an indigent defendant who, at the time of the civil tort proceeding, was already deprived of his liberty. *Piper v. Popp*, 167 Wis. 2d 633, 428 N.W.2d 353 (1992). There we held that the defendant had no constitutional right to appointment of counsel. 167 Wis. 2d at 655-65. We observed that a state court may use a number of means to avoid depriving indigent incarcerated defendants of the opportunity to defend themselves in civil actions. Those methods include postponing the trial until the prisoner is released from incarceration, granting a continuance until the prisoner can retain counsel, allowing the prisoner to appear in circuit court *pro se*, or appointing counsel. *Piper*, 167 Wis. 2d at 638, 651-52. We did not apply the *Ferris* rule to the facts before us in *Piper*, because Mr. Popp's liberty was not in jeopardy. No period of incarceration could result if Mr. Popp were to lose the civil claim for damages. Thus, application of the *Lassiter* balancing test was appropriate. "A presumption against appointment of counsel for an indigent civil litigant exists when a litigant will not

that the Milwaukee County Circuit Court here made any effort to determine whether Pultz was financially able to comply with the forfeiture condition. We held that if a circuit court grants a purge condition, the purge condition should serve remedial aims, the contemnor should be able to fulfill the proposed purge, and the condition should be reasonably related to the cause or nature of the contempt. *In re Marriage of Larsen*, 165 Wis. 2d 679, 478 N.W.2d 225 (1990).

127

likely be deprived of personal liberty if unsuccessful in the litigation." *Piper*, 167 Wis. 2d at 655.

We applied the *Lassiter* balancing test more recently in *Joni B. v. State*, 202 Wis. 2d 1, 549 N.W.2d 411 (1996). There we considered a facial challenge to Wis. Stat. § 48.23(3), which prohibited a court from appointing counsel for any party other than the child in a proceeding under Wis. Stat. § 48.13.[12] *Id.* at 5. We recognized that there was no direct threat to liberty in the proceedings under that chapter, so we considered the three factors set out in *Lassiter* against the presumption that a right to appointed counsel exists only when personal freedom is jeopardized. *Id.* at 12-13. We weighed the private interests at stake in the proceeding,[13] the government's interest, and the risk that the procedures used will lead to erroneous decisions. *Id.* at 13. We acknowledged that there is no absolute right to appointed counsel in civil cases carrying no threat of incarceration. *Id.* at 18. We concluded, however, that the act violated the Due Process Clause of the Fourteenth Amendment because it precluded any case-by-case determination of the necessity for appointment of counsel for any party other than the child in a CHIPS action. *Id.*

---

[12] Wis. Stat. § 48.13 delineates the court's jurisdiction over children alleged to be in need of protection or services, commonly known as CHIPS actions.

[13] In assessing the private interests at stake, we did note that "[i]f the CHIPS action was initiated on the basis of allegations of neglect or abuse, as is commonly the case, the parent may also be facing criminal prosecution. Once freedom of liberty is implicated, numerous additional due process concerns arise." 202 Wis. 2d at 15.

We disagree that the *Lassiter* decision has superseded our ruling in *Ferris*. Unlike the facts presented in *Lassiter*, *Piper* and *Joni B.*, the facts here and in *Ferris* demonstrate that the liberty of the litigants was threatened if the State prevailed. Based upon that threat to liberty, we conclude that a defendant in a remedial contempt proceeding, if indigent, is entitled to appointed counsel at public expense.

By adopting a blanket rule here, where the threat to liberty is real, we endorse the reasoning that "procedural norms are devised to ensure that justice may be done in every case, and to protect litigants against unpredictable and unchecked adverse governmental action." *Lassiter*, 452 U.S. at 50 (Blackmun, J. dissenting). Other jurisdictions have adopted a rule similar to that which we adopt here, based on similar reasoning. Every federal circuit court that has addressed the question has determined that due process requires an automatic appointment of counsel for an indigent facing incarceration in a civil or remedial contempt proceeding.[14] *McBride v. McBride*, 431 S.E.2d 14, 17

---

[14]*McBride v. McBride*, 421 S.E.2d 14, 18, n.1 (N.C. 1993). *United States v. Bobart Travel Agency, Inc.*, 699 F.2d 618, 620 (2d Cir. 1983); *In re Kilgo*, 484 F.2d 1215, 1221 (4th Cir. 1973); *Ridgway v. Baker*, 720 F.2d 1409, 1413-14 (5th Cir. 1983); *Sevier v. Turner*, 742 F.2d 262, 266-67 (6th Cir. 1984); *United States v. Anderson*, 553 F.2d 1154, 1155-56 (8th Cir. 197)(per curiam); *Walker v. McLain*, 768 F.2d 1181, 1185 (10th Cir. 1985), *cert. denied*, 474 U.S. 1061 (1986). For a recent discussion of the trend to recognize the right to appointed counsel in civil or remedial contempt proceedings, *see* Hausler, Kurt F., *The Right to Appointment of Counsel for the Indigent Civil Contemnor Facing Incarceration for Failure to Pay Child Support - McBride v. McBride,* 16 Campbell L. Rev. 127 (Winter, 1994).

(N.C. 1993). The majority of states that have decided this issue have adopted the same rule.[15] *Id.* Admittedly, some jurisdictions have chosen to conduct a case-by-case analysis for civil contempt proceedings. In New Hampshire, for example, the court maintains a distinction between civil and criminal contempt, reserving the right to appointed counsel for indigent defendants in criminal proceedings. *Duval v. Duval*, 114 N.H. 422, 322 A.2d 1 (1974). The *Duval* court characterized a civil contempt proceeding as one that arises out of a private

---

[15] *McBride v. McBride*, 431 S.E.2d 14, 18, n.2 (N.C. 1993). Even when some of the following jurisdictions apply the *Lassiter* balancing test, they all conclude that due process requires appointment of counsel for an indigent facing incarceration in a civil contempt proceeding: *Otton v. Zaborac*, 525 P.2d 537, 538 (Alaska 1974); *County of Santa Clara v. Santa Clara County Super. Ct.*, 5 Cal. Rptr. 2d 7, 10-12 (Cal. Ct. App. 1992) (indigent in a contempt for nonsupport proceeding has a right to court-appointed attorney based on very real threat of incarceration); *Padilla v. Padilla*, 645 P.2d 1327, 1328 (Colo. Ct. App. 1982); *Dube v. Lopes*, 481 A.2d 1293, 1294 (Conn. Super. Ct. 1984); *In re Marriage of Stariha*, 509 N.E.2d 1117, 1121-22 (Ind. Ct. App. 1987); *Johnson v. Johnson*, 721 P.2d 290, 294 (Kan. Ct. App. 1986); *Mead v. Batchlor*, 460 N.W.2d 493, 504 (Mich. 1990); *Cox v. Slama*, 355 N.W.2d 401, 402-03 (Minn. 1984); *Carroll v. Moore*, 423 N.W.2d 757, 766 (Neb. 1988), *cert. denied*, 488 U.S. 1019 (1989); *State ex rel. Gullickson v. Gruchalla*, 467 N.W.2d 451, 453 (N.D. 1991) (due process gives indigent defendant absolute right to court-appointed counsel in paternity proceeding); *In re Marriage of Gorger*, 728 P.2d 104, 105 (Or. Ct. App. 1986); *Bradford v. Bradford*, 1986 WL 2874, *3-*5 (Tenn. Ct. App.); *Ex parte Gunther*, 758 S.W.2d 226, 227 (Tex. 1988) (per curiam) (statutory right to appointment of counsel for indigent defendant if incarceration is possible result of contempt proceeding); *Tetro v. Tetro*, 544 P.2d 17, 19-20 (Wash. 1975); *Smoot v. Dingess*, 236 S.E.2d 468, 471 (W.Va. 1977).

wrong in which the defendant harms the plaintiff by his or her failure to comply with a court order. This characterization overlooks remedial contempt actions instituted by government agencies. Further, our current statute focuses on the purpose of the sanction for a finding of contempt, and no longer distinguishes between "civil" and "criminal" contempt. Wis. Stat. § 785; *see* footnote 1, *supra*.

## THE COLLOQUY

We reaffirm that when a defendant's liberty is threatened in a remedial contempt action brought by the government, the court must advise the defendant of his or her due process right to appointed counsel, if the defendant cannot afford counsel. We then look at how a court is to advise the defendant of such a right. The court of appeals read the lower court record as demonstrating that Pultz did not claim to be indigent, and moreover, that Pultz did not request a court-appointed attorney at the time of hearing. Slip op. at 5.

We agree with the court of appeals that Pultz complained that by virtue of his incarceration up to the time of the adjourned hearing, he did not have a chance to obtain an attorney. Nonetheless, it is incorrect for a circuit court to rely on a defendant to spontaneously reveal his state of indigency and/or to know to request a court-appointed attorney. Rather, the court must advise the defendant of this right and make the appropriate inquiry. *See Keller v. State*, 75 Wis. 2d 502, 509, 510, 249 N.W.2d 773 (1977) (holding in a criminal case that the trial judge must ensure that the record unconditionally and unequivocally demonstrates that the defendant intelligently, voluntarily and understandingly waived the constitutional right to counsel, whether or not defendant is indigent).

Further, timing is critical. *See State v. Wollman,* 86 Wis. 2d 459, 468-69, 273 N.W.2d 225 (1979) (ruling that determination of whether the court has abused its discretion by denial of a continuance requires the balancing of the defendant's constitutional right to adequate representation by counsel against the public interest in the prompt and efficient administration of justice). *See also Strickland v. Washington,* 466 U.S. 668, 692 (1984) (discussing harm that can result when a criminal defendant is denied the effective assistance of counsel). The *Strickland* Court noted that in certain Sixth Amendment contexts, actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. In those situations, "prejudice . . .is so likely that a case-by-case inquiry into prejudice is not worth the cost." 466 U.S. at 692.

██ To assure that the defendant who faces a threat to liberty at a contempt hearing is properly advised of the right to appointed counsel if he or she is found indigent, the circuit court must take the initiative. The circuit court must engage in a colloquy that clearly conveys the existence of this right to the defendant. Further, the colloquy must be initiated by the judge to inquire whether the defendant believes him or herself indigent. *Piper,* 91 Wis. 2d at 646-47. It is not sufficient, as the State would have here, that silence by the defendant in the absence of specific questioning means that indigency is not present.

Before the court proceeds on the contempt motion, it should advise the *pro se* defendant that if he or she is found to be in contempt, the court could impose sanctions which may include the defendant having to spend time in jail. The court must also instruct that the defendant is entitled to be represented by an attorney.

If the defendant wants an attorney but is financially unable to pay for a lawyer, the court must advise the defendant that an attorney will be appointed at public expense.[16] The circuit court must be satisfied that the defendant understands those rights and must make the necessary findings based upon the defendant's answers and any other evidence the court receives. If the defendant wants to obtain counsel, the court should give the defendant a reasonable time either to retain counsel or, if indigent, to receive appointed counsel before proceeding on the contempt motion.

Finally, Pultz also asserted that he was not given adequate notice of the adjourned hearing. Inherent in that assertion is the argument that Pultz was denied due process based on the circuit court's denial of his adjournment request. That denial, according to Pultz, prevented him from having adequate time to prepare his defense to the contempt motion. Because the circuit court failed to advise Pultz of his right to appointed counsel should he need one, we remand for a new hearing and thus need not consider the adequacy of the notice provided to Pultz.

■

For the foregoing reasons, we hold that the circuit court erred by failing to advise Pultz of his right to appointed counsel if he could not afford one, and so reverse the order of the circuit court and remand for a new hearing on the State and City's motion for contempt.

We deny the petitioner's request for costs and reasonable attorney fees.

---

[16] If the defendant states that he or she cannot afford counsel, a determination of indigency will be undertaken.

*By the Court.*—The order of the circuit court finding contempt is reversed and the cause remanded for a new contempt hearing.