COURT OF APPEALS
DECISION
DATED AND FILED

May 1, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1706**

STATE OF WISCONSIN

Cir. Ct. No.  2018FA296

IN COURT OF APPEALS
DISTRICT II

IN RE THE FINDING OF CONTEMPT IN:

IN RE THE MARRIAGE OF:

JULIE C. VALADEZ,

PETITIONER-APPELLANT,

STATE OF WISCONSIN,

RESPONDENT,

V.

RICARDO VALADEZ,

RESPONDENT.

APPEAL from orders of the circuit court for Waukesha County: RALPH M. RAMIREZ, Judge. *Reversed and cause remanded with directions.*

¶1    GUNDRUM, P.J.[1]   Julie C. Valadez appeals from the circuit court's order finding her in contempt for failing to comply with an order to pay child support and from the court's order denying her postdisposition motion to vacate the contempt order.  She contends she was "constructively denied the assistance of counsel," or alternatively, that she was "denied the *effective* assistance of counsel." (Emphasis added).  Because respondents State of Wisconsin and Ricardo Valadez concede (by lack of opposition) that she was constructively denied representation by counsel at the contempt hearing, we must reverse and remand for a new hearing.

## *Background*

¶2    On July 8, 2022, the circuit court entered an order requiring Valadez to pay Ricardo child support in the amount of $137 per month, which consisted of $12 per month in child support (due to an offset) and $125 per month towards health insurance for their children.  After several months of Valadez failing to make any payments, the State filed an affidavit in support of an order to show cause why Valadez should not be held in contempt for her failure.[2]

¶3    At the January 3, 2023, contempt hearing, counsel appointed by the public defender's office appeared for Valadez, but Valadez did not.  The State introduced a document purporting to show Valadez's failure to make required

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  Valadez herself had filed several motions, all of which were scheduled to be heard on the same date as the contempt hearing.  The circuit court dismissed all of those motions due to her failure to appear at the hearing.  We note that the record indicates appointed counsel's representation of Valadez in court that day was limited to the contempt matter; it did not include representing her on the other motions.

payments. Through a series of leading questions to which counsel for Valadez did not object, the State led Ricardo to testify that the document shows that Valadez had failed to make required child support payments or arrears payments for the several months leading up to the hearing. Ricardo further testified he had not received any child support payments from Valadez. Led by the State, Ricardo agreed that, according to the document, Valadez owes him $1,636.57.

¶4 When asked if she had any questions to ask Ricardo, counsel for Valadez responded, "No." When asked if she had any objection to the State's document being admitted into evidence, counsel responded, "No objection." After the State rested its case, the circuit court asked counsel for Valadez if she had any witnesses to present, and counsel responded, "I do not have any witnesses."

¶5 The circuit court then turned to the parties for closing arguments. The State provided a closing argument covering approximately one and one-half pages of the transcript, including "I don't believe there are any arguments before the [c]ourt at this time or any evidence before the [c]ourt at this time that Ms. Valadez has an inability to pay." The State requested that the "purge in this matter be set at $685.00 … with the understanding [Valadez] would never need to make that lump sum payment as long as regular child support and arrears payments are coming in each month." The State also requested eighty dollars in "service fees" "based on the State's attempt to serve Ms. Valadez personally with the action."

¶6 When the circuit court asked counsel for Valadez if she had a closing argument, she responded, "Your Honor, I don't have any additional information to provide the [c]ourt at this time with Ms. Valadez not being present." The court then asked, "You have nothing else to offer at this time?" and

counsel responded, "No, I do not. I would put on the record that Ms. Valadez did file her own motion on November 7th of 2022, document number 1157, but I do not have any additional comments as to that motion."

¶7      The circuit court noted that Valadez was not in court, which put her counsel "at a disadvantage," adding that "[t]here is little [counsel] can do under the circumstances." The court found that Valadez

> is very, very much cognizant of the child support order. She has opposed it, contested it, and challenged it in any number of ways. There isn't anything on this record that would demonstrate to the [c]ourt that she has any impediment to working or garnering some wages to pay child support.
>
> She has exhibited an intelligence in her writings. She has exhibited the ability to put forward a substantial amount of work product in terms of pages. There isn't anything on the record that I would know or understand to indicate that she does not have an ability to pay child support.

The court imposed a "thirty day jail term with work and treatment release" but stayed it "for two years with a purge amount of $685.00 and continued payment of child support." The court also imposed the eighty dollars in service fees, to be paid within two months of the hearing. When the court asked counsel for Valadez if there was anything else, counsel responded, "No, thank you."

¶8      Represented by an assistant state public defender, Valadez filed a postdisposition motion requesting that the circuit court vacate the contempt order and hold a new contempt hearing because

> [t]rial counsel failed to function as the counsel guaranteed to Ms. Valadez—she failed to subject the State to any sort of adversarial testing. Further, she failed to request permission to withdraw from representation or argue for revision of the child support order.

4

> Consequently, Ms. Valadez was denied the effective assistance of counsel ….

Among other arguments, Valadez asserted that the child support order requiring her to contribute $125 per month to Ricardo for the children's health insurance was invalid. This requirement was invalid, according to Valadez, because the circuit court had previously imputed income of $1,099 per month to her, which was less than 150% of the federal income level for a family of one in 2022, and thus, "[u]nder Wisconsin Administrative Code DCF § 150.05(1)(c), … [she] could not be ordered to contribute towards the cost of health insurance for the children."

¶9 At the hearing on the motion, contempt counsel testified that she "had one or two phone calls with [Valadez] and e-mail communications" prior to the contempt hearing. Counsel also stated that when she asked Valadez about her contempt case, Valadez "indicated that she would feel more comfortable if [lead public defender] Attorney Jeremy Perri was included in the phone call from the public defender's office." Counsel "attempted to ask [Valadez] about the order to show cause but she would not talk about it without Attorney Perri there."[3] Counsel indicated she did not recall the substance of her e-mail communications with Valadez. Counsel testified she had obtained no information related to the order to show cause for contempt "other than what was in the State's affidavit and what was previously in [Valadez's] file." Counsel indicated she received no information about Valadez's ability to pay child support, her education level, her employment status, her ability to work, or her location at the time counsel

---

[3] The transcript indicates that postdisposition counsel then asked contempt counsel: "She was then willing to speak with you without Attorney Perri also being on the call?" Contempt counsel responded, "Yes." In light of the context leading up to this question and answer, we assume postdisposition counsel actually asked contempt counsel if Valadez was "unwilling" or "not willing" to speak with her without Attorney Perri also being on the call.

contacted her. Counsel did not recall if she asked Valadez if she was planning to appear for the contempt hearing.

¶10 Contempt counsel agreed that in e-mail communications with postdisposition counsel, contempt counsel informed postdisposition counsel that Valadez did not provide contempt counsel with any information. Contempt counsel also indicated in her e-mails with postdisposition counsel that Valadez was "unwilling to speak with [contempt counsel] and believed her prior attorney should have been on her case." When asked, "And despite having no information, you appeared at the contempt hearing and informed the [c]ourt that you were ready to proceed," counsel responded, "Yes." When asked, "At any time after your appointment, did you consider moving to withdraw as counsel," counsel responded, "She never asked me to withdraw, so no." Counsel acknowledged she had reviewed the order to show cause prior to the contempt hearing and that it "requested sanctions, as well as any and all relief the [c]ourt deems fair and equitable under the circumstances including review or modification of the child support order."

¶11 Contempt counsel indicated she believed she had reviewed the child support order prior to the contempt hearing, and she agreed she had "reviewed Ms. Valadez's pro se motion to dismiss the contempt arguing that the child support order was improper." Counsel indicated she did not consider asking the court to review or modify the child support order because "in my practice when I attend the order to show cause hearings, typically they will not address a motion to modify support without a proper filing and notice." When asked, "And you don't think the State's filing was proper for that," counsel responded, "No." When asked if she "consider[ed] arguing that the child support order was improper because Ms. Valadez cannot be ordered to contribute to the cost of health

insurance," counsel responded, "No." When further asked if she "considered arguing that [Valadez] should not have been ordered to pay child support retroactive to November 1st of 2021," counsel responded, "No."

¶12 When asked on cross-examination if Attorney Perri was ever on a phone call with her and Valadez, counsel responded, "No. I had sent him an e-mail asking him if he would join a phone call with us and I didn't receive a response from him until the day after our hearing." In his response, Perri "forwarded [counsel] multiple e-mails that Ms. Valadez had sent him that I did not receive, basically asking what his process was and how he appoints attorneys to cases." Counsel stated she believed her representation of Valadez was very limited, relating only to the order to show cause, and that she did not believe she had a duty "to argue that the child support was incorrectly calculated." She agreed that "Valadez would really have no communication with [counsel] or provide [counsel] with any information regarding why she should not be found in contempt for her failure to pay the $137.00 a month." Counsel indicated that after her phone call with Valadez in which Valadez indicated she wanted Perri on the phone, counsel believes she may have called Valadez again and sent e-mails, but that Valadez was not responsive. On redirect examination, counsel again agreed that the order to show cause from the State asked "for any and all other relief, including review and/or modification of the child support order if the [c]ourt deems appropriate."

¶13 In closing arguments, postdisposition counsel argued that not only was Valadez denied the effective assistance of counsel, she was constructively denied the assistance of counsel because

> [a]s is clear from the transcript of the hearing, there was no adversary to the State at th[e] contempt hearing.

7

> [Contempt counsel] asked no questions of the witness. She presented no evidence of her own. She made no objections. And when it came time for argument, she made no argument against a finding of contempt. She didn't even ask the [c]ourt not to find Ms. Valadez in contempt.

After substantive argument by counsel for Ricardo in opposition to Valadez's postdisposition motion, the circuit court turned to the State for its closing argument, but the State responded: "The State would not take a position as it relates to the motion before the [c]ourt today. I don't think it would be appropriate for the State to opine as to opposing [contempt] counsel's performance. That would be the State's position today." When the court turned to the guardian ad litem for any comments, the GAL stated she had "[n]othing to add."

¶14 The circuit court denied Valadez's postdisposition motion. It stated, inter alia, that

> [t]here was a valid court order ordering that she pay child support, that she pay it on a monthly basis. It was a valid court order ….
>
> Ms. Valadez had absented herself voluntarily at that time and continues to do so …. Obviously we didn't hear from Ms. Valadez today, but what we do have … is [contempt-counsel] telling us, in essence, that Ms. Valadez created and constructed a situation where she sent [contempt-counsel] to battle with no ammunition. No information. No knowledge. No ability to effectively, intelligently, nor honestly question witnesses when Ms. Valadez chose not to give her that information.
>
> So, I'm going to find on this record that there is not a constructive denial of the assistance of counsel but rather, quite honestly, there is a deliberate attempt … to not give [contempt counsel] the information that she needed to be effective and that was on the doings of Ms. Valadez ….
>
> So, I cannot find constructive denial of the assistance of counsel but, rather, deliberate efforts on the part of Ms. Valadez to make sure that her attorney did not have information and could not prepare herself for the hearing.

8

> I can't find that [contempt counsel's] behavior was deficient because she simply didn't have the resources, the information, the ammunition, or any ability to be effective as created by the doings of Ms. Valadez.

Valadez appeals.

### *Discussion*

¶15 Our supreme court has held that an indigent defendant in a contempt proceeding has a "constitutional due process right to appointed counsel" at public expense. *State v. Pultz*, 206 Wis. 2d 112, 119, 129, 556 N.W.2d 708 (1996). Whether this right has been violated is a question we review independently. *State v. Tung*, 2023 WI App 33, ¶19, 408 Wis. 2d 544, 993 N.W.2d 706.

¶16 On November 10, 2023, Valadez, by the same assistant state public defender who represented her on the postdisposition motion, filed her eighteen-page brief-in-chief in this appeal, arguing that the circuit court's contempt order must be reversed and remanded for a new contempt hearing for either of two reasons: She was "constructively denied the assistance of counsel" at the contempt hearing or, alternatively, she was "denied the effective assistance of counsel" at the hearing. As to the first basis, Valadez presents a developed, approximately five-page argument based upon the United States Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648 (1984), as well as relevant Wisconsin published case law. Valadez's alternative argument that her appointed counsel performed ineffectively is approximately seven pages.

¶17 On January 3, 2024, Ricardo submitted a letter to this court advising he would not be filing a brief in response to that of Valadez. While Ricardo's letter states that "the [c]ircuit [c]ourt's opinion was correct and supported by the record," and he hoped it would be affirmed, it also states he "understands his

failure to file a brief may result in a different decision." On that same day, this court also received a letter from the State indicating, similar to its position at the postdisposition hearing, that it "takes no position with respect to Ms. Valadez's appeal of the Order Denying Post Disposition Relief," and that it would "not be filing a brief in this appeal."

¶18 Apparently having had a change of heart, on January 11, 2024, the State did file a response brief. In its brief, however, the State responds only to Ms. Valadez's alternative contention that she was denied the *effective* assistance of counsel; it develops no arguments in opposition to Valadez's arguments that she was constructively denied the assistance of counsel. The State does not even mention *Cronic* or the related, published Wisconsin case law cited by Valadez in her brief-in-chief.

¶19 It is well-known and well-established that arguments that are not contested are deemed conceded. *Botdorf v. Krebsbach*, 2013 WI App 99, ¶12 n.3, 349 Wis. 2d 736, 837 N.W.2d 641 ("Unrefuted arguments are deemed admitted."). As a result, we have no choice but to conclude that both Ricardo and the State have conceded that Valadez was constructively denied the assistance of counsel at the contempt hearing and that this matter must be remanded for a new contempt hearing.

¶20 As noted, in her brief-in-chief, Valadez develops her argument that she was constructively denied the assistance of counsel because her appointed counsel essentially did nothing to advocate for her at the contempt hearing. Such an argument is not common, as it is no doubt rare that defense counsel, even when representing the most challenging of defendants, puts forth no fight on behalf of his or her client. But that is her argument, following the line of cases starting with

*Cronic*, which was released the same day as the much more familiar case of *Strickland v. Washington*, 466 U.S. 668 (1984).

¶21     In *Strickland*, the United States Supreme Court expressed that "[t]he Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment," including the provision stating that "the accused" has the right "to have the Assistance of Counsel for his defence." *Id.* at 684-85; *see* U.S. CONST. amend. VI. The *Strickland* Court further explained

> [t]hat a person who happens to be a lawyer is present at trial … is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

*Strickland*, 466 U.S. at 685.

¶22     As is well-known, *Strickland* established the standard for ineffective assistance of counsel, including the requirement that a defendant challenging counsel's performance prove that it was both deficient and prejudicial. *Id.* at 687. The *Strickland* Court also recognized, however, that "[i]n certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice," because prejudice in such a circumstance "is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id.* at 692. The Court expanded on this principle in *Cronic*.

¶23     In *Cronic*, the Court explained that a defendant is constructively denied the assistance of counsel "if counsel entirely fails to subject the

11

prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. "No specific showing of prejudice" is required in such a circumstance. *Id.* When considering whether a defendant has been constructively denied the assistance of counsel, a court must determine whether counsel "failed to function in any meaningful sense as the Government's adversary." *Id.* at 666.

¶24 In *Bell v. Cone*, the Court emphasized that the *Cronic* principle applies only if counsel "*entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Bell*, 535 U.S. 685, 697 (2002) (quoting *Cronic*, 466 U.S. at 659). Absent an "entire[]" failure, a challenge based on counsel's performance will instead fall under the ineffective assistance of counsel standard laid out in *Strickland*. *See Bell*, 535 U.S. at 695; *see also State ex rel. Obriecht v. Thurmer*, No. 2009AP1325, unpublished slip op. ¶41 (WI App Apr. 26, 2012) ("[E]ven if counsel presents just a partial defense, the *Strickland* test applies."). The *Cronic* Court recognized that

> [o]f course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade. At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt.

*Cronic*, 466 U.S. at 656 n.19 (citation omitted).

¶25 Less than one year ago, we addressed *Cronic*, stating:

> The Sixth Amendment requires that counsel act as an advocate for the defendant within an adversarial process—maintaining "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." "[I]f the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated."

12

*Tung*, 408 Wis. 2d 544, ¶25 (citation omitted; alteration in original). Cognizant of the *Cronic* standard, we now consider the circumstances of the case before us and Valadez's arguments regarding the same.

¶26 Based upon the transcripts of the contempt and postdisposition hearings, the circuit court correctly found that counsel's ability to represent Valadez as effectively as possible at the contempt hearing was compromised by Valadez's failure to appear at the hearing and her apparent lack of willingness to discuss the case with contempt counsel absent Attorney Perri also participating in such discussions. That said, in her brief-in-chief on appeal, Valadez argues that counsel still could have challenged the State's contempt case but instead did nothing to this end. Valadez writes:

> Trial counsel's failure in this case was complete; she failed to contest any part of the state's case. Trial counsel made no objections. She did not cross-examine the state's only witness. She failed to call any witnesses or present any evidence of her own. Finally, trial counsel made no argument against a finding of contempt. Aside from noting that she had no additional information for the court, and that Ms. Valadez had filed her own motion to dismiss, trial counsel said nothing. Trial counsel failed to act as an advocate for Ms. Valadez and the state's case was met with no resistance or defense. The contempt hearing would have played out in exactly the same manner had trial counsel not been there at all.

Valadez further asserts that

> counsel could have advanced Ms. Valadez's arguments regarding the validity of the child support order or, at the very least, she could have used information in the court record regarding Ms. Valadez's lack of employment history and low-income status to ask that the circuit court not find Ms. Valadez in contempt. Instead, trial counsel did nothing other than appear on Ms. Valadez's behalf.

¶27    Like Valadez's counsel who failed to contest the State's position at the contempt hearing, on appeal, the State and Ricardo have failed to contest Valadez's argument that she was constructively denied the assistance of counsel at that hearing. Indeed, the State did not even take a position at the postdisposition hearing.

¶28    Of note, we do not make an on-the-merits determination here that Valadez was in fact constructively denied counsel at the contempt hearing. Instead, we conclude that in her brief-in-chief, Valadez developed an argument that she was, and neither the State nor Ricardo has provided any response. As a result, we conclude they have conceded Valadez's argument that she was constructively denied the assistance of counsel at the contempt hearing. Again, it is well-established law that "[a]rguments not rebutted on appeal are deemed conceded." *Shadley v. Lloyds of London*, 2009 WI App 165, ¶26, 322 Wis. 2d 189, 776 N.W.2d 838; *see also Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments" for a party.).

¶29    In conclusion, because both Ricardo and the State have conceded that Valadez was constructively denied the assistance of counsel at the contempt hearing and thus that this matter must be remanded for a new contempt hearing, we so order.

            *By the Court.*—Orders reversed and cause remanded with directions.

            This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.