**Frederick G. JACKSON, Petitioner,**

v.

**Jon E. LITSCHER, Respondent.**

**No. 00–C–1587.**

United States District Court,
E.D. Wisconsin.

March 19, 2002.

---

Melinda A. Swartz, Wisconsin State Public Defenders Office, Milwaukee Appellate Division, Milwaukee, WI, for petitioner.

David J. Becker, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for respondent.

### DECISION AND ORDER

ADELMAN, District Judge.

Petitioner, Frederick G. Jackson, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in Milwaukee County Circuit Court of conspiracy to possess cocaine with intent to deliver. Petitioner pled guilty to the charge and was sentenced to eight years in prison after the court denied a motion to suppress his confession. He appealed the denial of the motion, and the state court of appeals affirmed, one judge dissenting. *State v. Jackson,* 229 Wis.2d 328, 600 N.W.2d 39 (Ct.App.1999). His petition for review was denied by the state supreme court. *State v. Jackson,* 230 Wis.2d 272, 604 N.W.2d 571 (1999) (table).

Petitioner argues that his rights under the Fifth and Fourteenth Amendments were violated when, after receiving *Miranda* warnings, *see Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he requested counsel and was misinformed that counsel was not then available. Soon after receiving this misinformation he confessed. The issue presented

is whether the state courts improperly refused to suppress the confession.[1]

## I. BACKGROUND

### A. Facts

On May 29, 1997, Milwaukee police officers investigating a report of gunshots observed petitioner driving fast and stopped his car. One of the officers stated that she observed a white substance that resembled cocaine all over petitioner's mouth and teeth. When asked what was in his mouth, petitioner fled and was arrested a few minutes later. Police found a powdery substance in a white plastic bag and two weight scales in his car although the substance later tested negative for cocaine.

Petitioner did not receive a probable cause hearing until June 5, for which there is no explanation in the record. On June 2, 1997, he was interviewed by Milwaukee police detective James Guzinski in a room in the County Criminal Justice Facility. The record contains no description of the room. The officer testified at the state court suppression hearing that he first obtained background information from petitioner and then advised petitioner of his *Miranda* rights.

Petitioner then asked "if he could have a lawyer right now." (Answer, Ex. J at 26:24.) The officer testified that petitioner's "intent to me was to have a lawyer present there, then and there, right now, and if I could arrange for that." (*Id.* at 27:11–:13.) The officer told petitioner that he could not obtain an attorney for him and that a public defender would be assigned when charges were issued. The officer's testimony continued:

Q: Okay. Could you as a matter of actual fact have gotten on the phone at that moment and tried to summon an attorney from the Public Defender's or somewhere else?

A: No.

Q: Why not?

A: I had no phone. I'm in a locked room. I have no access to any of these things.

Q: You were at the Criminal Justice Facility?

A: That is correct.

Q: And you had no access to a phone to call anyone?

A: I had no access to leave the room.

Q: You had no way to get him a lawyer at that point?

A: No.

Q: In your mind the words you said about having a Public Defender appointed once the District Attorney decided on charges, did you give Mr. Jackson any time[ ]frame in which that would happen?

A: As to minutes or hours?

Q: Or days.

A: I told him that the case would be reviewed and then when that—once charges were established the Public Defender's Office would step in for his defense.

(*Id.* at 27:22–28:18.)

The information that the officer conveyed to petitioner about when counsel could be appointed and made available to him was false and directly contrary to state law. The Wisconsin Public Defender's Office is statutorily authorized to provide counsel to adults in custody prior to charging on an emergency basis outside of regular business hours. Wis.Stat. §§ 977.05(4)(h) & 977.05(6)(c); Wis.Admin.Code §§ PD 2.01(1), 2.02(1), 2.03(2) ("The state public defender or county designee shall be available 24 hours per day

---

1. Petitioner also raised other issues, which I addressed in an earlier decision.

including weekends and legal holidays."). Moreover, Wis.Stat. § 967.06 provides:

Persons [detained or arrested] who indicate at any time that they wish to be represented by a lawyer, and who claim that they are not able to pay in full for a lawyer's services, shall immediately be permitted to contact the authority for indigency determinations specified under s. 977.07(1). The authority for indigency determinations in each county shall have daily telephone access to the county jail in order to identify all persons who are being held in the jail.

The officer testified that petitioner again stated that he wanted a lawyer but did want to speak to the officer.

Q: And then what was your reply?

A: I then told him I couldn't talk to him now because he wished an attorney.

Q: Did you then get up and begin to leave the room?

A: No.

Q: What did you do?

A: I paused for a few minutes, and then he re-initiated conversation with me, and at that point is when he replied to me that he wished to talk to me now, and that's when I re-initiated whether or not he was going to waive his right to an attorney, and that's when he replied yes he would, and then I proceeded to go through the thing with the questions about the occurrence.

(*Id.* at 29:10–:22.)

Petitioner also testified about the interrogation. He stated that he advised the detective that he did want to talk but also wanted an attorney present so that he would not get into any further trouble. He said that the officer suggested that it would look better to the district attorney if petitioner spoke without a lawyer because

he would not appear to be a hardened criminal hiding behind a lawyer.

Petitioner admitted that he had been arrested and read his rights before. However, he claimed that in this instance the procedure was different because he was prodded into making statements. He testified that he expected to get a lawyer before he proceeded with the interrogation.

## B. State Court Decisions

The trial court ruled as follows:

I see this one really as a tough call. I'm going to rule that the Miranda warnings were given and they were complied with; and, based upon the totality of the circumstances, the statement was voluntarily given. I do this in part because I see these—this defendant I think—its something more than just being informed that he's been through this in the past. I think that this is a fairly intelligent defendant we have here. I think that he—and he made some conscious choices which were his to make and so that it was a knowing and intelligent waiver.

(*Id.* at 44:4–44:14.)

On appeal, the court of appeals majority acknowledged that in *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that when a person in custody tells an interrogating officer that he wants a lawyer, interrogation must cease until counsel is made available, unless the suspect initiates further communication. *Jackson,* 229 Wis.2d at 337, 600 N.W.2d 39. However, the majority stated:

"*Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could

not afford one," and that if "the police cannot provide appointed counsel, *Miranda* requires only that the police not question a suspect unless he waives his right to counsel." This is precisely what the trial court found happened here. Jackson's argument that he was somehow misled into giving up his *Miranda* rights because the detective told him that he would be given a public-defender lawyer "once charges were established" is without merit.

*Id.* (citations omitted) (quoting *Duckworth v. Eagan,* 492 U.S. 195, 204, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989)).

The majority observed that in *Duckworth* the Supreme Court found that an interrogating officer's accurate statement that a lawyer would be appointed " 'if and when you go to court' " satisfied *Miranda. Id.* at 338, 600 N.W.2d 39 (quoting *Duckworth,* 492 U.S. at 199, 109 S.Ct. 2875). The majority applied *Duckworth* and concluded that the officer's inaccurate statement that counsel could not be appointed for petitioner until after charges were issued did not require suppression of the confession. *Id.* at 339, 600 N.W.2d 39.

The majority further stated that even if the officer had intentionally lied to petitioner, the waiver would not necessarily be invalid. The court cited *Frazier v. Cupp,* 394 U.S. 731, 737–39, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), for the proposition that even deliberate misstatements by the police are but one factor to consider in determining whether a defendant has voluntarily relinquished his right not to undergo custodial interrogation. *Jackson,* 229 Wis.2d at 340, 600 N.W.2d 39.

In dissent, Judge Schudson wrote that because petitioner's resumption of communication and waiver of counsel were based on inaccurate information, petitioner's rights under *Miranda* had not been "scrupulously honored." *Id.* at 346, 600 N.W.2d 39 (Schudson, J., concurring in part, dissenting in part). He stated that *Duckworth* was inapplicable because in that case the officer correctly described the process for appointment of counsel under Indiana Law. In Wisconsin, conversely, counsel could have been appointed for petitioner at the time. *Id.* at 352, 600 N.W.2d 39. Judge Schudson concluded that petitioner had requested counsel because he believed that he was incapable of undergoing interrogation without representation, that he was then misinformed about whether counsel could be made available at the interrogation, and that his resumption of communication was based in part on that misinformation, rendering his subsequent waiver of counsel involuntary. *Id.* at 353–54, 600 N.W.2d 39.

## II. CONSTITUTIONAL STANDARD

### A. Controlling Supreme Court Decisions

Two Supreme Court decisions, *Miranda* and *Edwards,* provide the standard by which I analyze whether this interrogation complied with the Constitution. In order to safeguard the privilege against compelled self-incrimination guaranteed by the Fifth and Fourteenth Amendments, *Miranda* requires law enforcement officers to warn a suspect that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. Under *Miranda,* these rights may be waived, so long as the waiver is voluntary, knowing, and intelligent. However, if the suspect

indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

*Id.* at 444–45, 86 S.Ct. 1602. These rights must be "scrupulously honored," *id.* at 479, 86 S.Ct. 1602, and statements obtained in violation may not be used by the prosecution. *Id.* at 444, 86 S.Ct. 1602.

In *Edwards,* 451 U.S. at 484–85, 101 S.Ct. 1880, the Supreme Court held:

> that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police.

It is inconsistent with *Miranda* and its progeny for officers, at their instance, to re-interrogate an accused who has clearly asserted his right to counsel. *Id.* at 485, 86 S.Ct. 1602. If an accused reopens dialog with the police, the question becomes whether a valid waiver of the right to counsel and the right to silence has occurred, "that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances." *Id.* at 486 n. 9, 86 S.Ct. 1602.

**B. Standard for Determining Validity of Miranda Waiver**

■■■ Two questions are presented when a *Miranda* waiver is challenged: (1) was the waiver voluntary in the sense that it was the product of a free and deliberate choice, rather than coercion, intimidation, or deception; and (2) was the waiver intelligent, in the sense that it was made with full awareness of both the nature of the right being abandoned and the consequence thereof. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *see also Henderson v. DeTella,* 97 F.3d 942, 946 (7th Cir.1996). The latter question is one of fact, and the state court's historical findings as to petitioner's knowledge, understanding, and determination to forego his rights are entitled to a presumption of correctness in a habeas case. *DeTella,* 97 F.3d at 946. The former question is one of law, which I review *de novo* in a habeas case. *Id.*

■■■ I must analyze the voluntariness of the waiver under the totality of the circumstances, considering petitioner's characteristics, the conditions of the interrogation, and the conduct of the officer. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda,* 384 U.S. at 478, 86 S.Ct. 1602. The government bears a "heavy burden" to demonstrate a valid waiver. *Id.* at 475, 86 S.Ct. 1602.

In the present case the officer's misinformation about when an appointed lawyer could be made available to petitioner influenced his decision to confess. The state court of appeals considered this deceptive information as merely one factor in the totality of the circumstances. *Jackson,* 229 Wis.2d at 340, 600 N.W.2d 39. The court cited *Frazier,* 394 U.S. at 739, 89 S.Ct. 1420, as authority for treating the misinformation in this way.

However, *Frazier* did not concern the voluntariness of a *Miranda* waiver but rather the voluntariness of the admission itself. *Id.* at 739, 89 S.Ct. 1420. This is a critical distinction.[2] *See* Mark Berger,

---

**2.** *Frazier* also involved an interrogation that

occurred in 1964 and was not governed by

*Compromises and Continuity: Miranda Waivers, Confession Admissibility, and the Retention of Interrogation Protections,* 49 U.Pitt.L.Rev. 1007, 1018 (1988) (footnotes omitted) ("[I]t is apparent both from the Supreme Court's historical approach to waiver, as well as from its treatment of the doctrine in the Miranda opinion itself, that waiver was intended to encompass a more demanding standard than the voluntariness doctrine it replaced."). Professor Berger notes that "waiver should remain an issue distinct from the question of compulsion under the fifth amendment." *Id.* at 1053. The *Miranda* "decision sets a standard for relinquishment of rights which does not permit police manipulation. Unlike the voluntariness standard which tolerated substantial official pressure, Miranda waivers were to be free-will decisions." *Id.* at 1020 (footnotes omitted).

The Supreme Court has repeatedly held that *Miranda* waivers may not be induced by misleading statements. *Miranda,* 384 U.S. at 478, 86 S.Ct. 1602 ("[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege."); *accord Moran,* 475 U.S. at 421, 106 S.Ct. 1135 (stating that the waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception"); *Berkemer v. McCarty,* 468 U.S. 420, 433, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) ("The purposes of the safeguards prescribed by *Miranda* are to ensure that the police do not coerce or trick captive suspects into confessing.").

Several of the Supreme Court's post-*Miranda* cases have held that a suspect need not be provided with information extrinsic to the warnings, critical as it may be to the suspect's ability to make a fully informed choice. *See Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (holding that suspect does not have to be made aware of all of the subjects of interrogation to validly waive *Miranda* rights); *Moran,* 475 U.S. at 426–27, 106 S.Ct. 1135 (holding that police need not inform suspect of lawyer's attempt to contact him). But the Court has never held that a suspect may be misled as to the "existence or dimensions of any of the applicable rights." Wayne R. LaFave et al., *Criminal Procedure* § 6.9(c) (Supp. 2001). Even in light of *Moran* and *Spring,* where indirect trickery may have occurred, "[p]resumably, the Court would invalidate a waiver where the police conveyed false information to the defendant which, in turn, led him to surrender his Miranda rights." Berger, *supra,* at 1036 n. 129.

Indeed, Professor LaFave, in his authoritative treatise, notes that the Supreme Court's "condemnation of the use of trickery suggests that using interrogation techniques which create either false confidence or resignation in a defendant will per se make the defendant's subsequent waiver ineffective." LaFave, *supra.; see also* Young, *supra,* at 477 n. 14 ("Because Miranda affirmatively requires police to tell suspects their rights in interrogation, the natural counterpart is that police may not lie about a suspect's right to counsel or right to refuse to respond to questions."). Even Laurie Magid, a supporter of deceptive police tactics to obtain confessions, observes: "*Miranda* does limit the use of deception in obtaining a waiver of rights or in responding to requests to invoke the rights. Once the police obtain a valid waiver, however, and absent any express invocation of the right to silence or counsel, *Miranda* leaves the police free to use almost any deceptive tactic." Laurie Magid, *Deceptive Police Interrogation Prac-*

---

*Miranda* because *Miranda,* a 1966 decision, was not retroactive. Deborah Young, *Unnec-*

*essary Evil: Police Lying in Interrogations,* 28 Conn.L.Rev. 425, 451 (1996).

*tices: How Far Is Too Far*, 99 Mich. L.Rev. 1168, 1175 n. 37 (2001).

Professor Berger points out that:

The case law since Miranda reveals no substantial evidence of backtracking on the prohibitions against direct threats, trickery, and undue pressure in the waiver process. Outright lies, false sympathy, and prolonged efforts to secure waivers from resistant suspects simply do not appear in appellate decisions affirming findings of waiver by trial courts. While such conduct may in fact occur, it now exists without legal sanction in the waiver process. And while the courts may tolerate these tactics to some degree in the evaluation of a statement's admissibility under the due process voluntariness test, at least the courts do not similarly treat the initial decision to participate in the interrogation. Miranda envisioned a system in which police would inform a suspect of his rights and would allow him to choose whether to waive his options for silence and counsel without improper exploitation of the isolated conditions of custodial interrogation. The current legal standard appears to be largely consistent with that vision.

Berger, *supra*, at 1036–37. While the "totality of the circumstances" test is used in both the due process voluntariness and the *Miranda* waiver contexts, Professor Berger notes: "The voluntariness component of the waiver standard appears to have been carried over virtually intact from the due process voluntariness test, subject to additional restrictions barring direct threats, deceit and cajolery." *Id.* at 1062–63.

Notwithstanding the clear import of *Miranda*, some lower courts have treated the use of deception and trickery in inducing *Miranda* waivers as merely one factor in a totality of the circumstances analysis as if they were analyzing a due process-volun-

tariness issue. LaFave, *supra*, § 6.9(c). The most prominent example of this confusion is *United States v. Velasquez*, 885 F.2d 1076, 1088 (3d Cir.1989), where the court applied *Frazier* to the issue of the voluntariness of a *Miranda* waiver. The court conceded that *Frazier* dealt with the voluntariness of a confession not a *Miranda* waiver, but stated: "However, there is a paucity of case law to guide us in the area of deception in the *Miranda* waiver context." *Id.*

The reason that there is a paucity of case law on the effect of deception on a *Miranda* waiver is because the issue was resolved in the *Miranda* decision. The Supreme Court has never backed away from the fundamental concept that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602. Unless and until it does, lower courts should hold that this language means what it says. The *Velasquez* type of analysis runs afoul of the plain language of *Miranda*, which forbids any use of deception to secure a waiver.

There are also sound policy reasons for treating the use of deception in inducing a waiver differently than deception in inducing a confession. First, the purpose of the *Miranda* warnings is to reduce the inherent coercion and give some power to a suspect in "an environment totally under police control." Berger, *supra*, at 1016. If the suspect is tricked into waiving his rights, it follows that the inherent coercion has not truly dissipated, and the suspect has no real power to control the situation. This is especially true where a suspect advised of his rights is falsely told after he attempts to invoke those rights that he cannot then do so.

Second, *Miranda* was designed to create a bright line to prevent police from using

coercive tactics. Charles D. Weisselberg, *Saving Miranda*, 84 Cornell L.Rev. 109, 162 (1998). As Professor Weisselberg notes, the voluntariness test for confessions, under which a certain amount of trickery is allowed, is "soft and value—laden." *Id.* at 163. Under this test, courts struggle to distinguish "big lies" from "little lies" and then weigh the deception along with the other factors in the case. Young, *supra*, at 452–53. This creates difficult decisions for courts and provides little guidance to police officers, who are often trained to use deceptive tactics in the interrogation room. *See id.* at 461–62.

A bright-line rule prohibiting false and misleading statements to secure a waiver will be easier for courts to administer and officers to follow than the alternative of evaluating falsehoods as part of the totality of the circumstances. A bright line rule will also curtail police efforts to circumvent *Miranda*, *see United States v. Orso*, 275 F.3d 1190, 1194 (9th Cir.2001) (Trott, J., dissenting) (condemning police deception prior to provision of *Miranda* warnings), and reinforce the notion that *Miranda* is "a constitutional decision," *Dickerson v. United States*, 530 U.S. 428, 438, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), that cannot be ignored. *See* Weisselberg, *supra*, at 189 (quoting police training videotape where deputy district attorney advises officers that they may disregard *Miranda* without violating the Constitution); *see also* Charles D. Weisselberg, *In The Stationhouse After Dickerson*, 99 Mich.L.Rev. 1121, 1122 (2001) (noting that *Dickerson* firmly rejects the view that *Miranda* is not a constitutional decision and may be ignored by officers).

▇ Thus, lies, tricks, or misleading statements may not be used to obtain a *Miranda* waiver. However, "[e]ven as-

suming that these cases [applying *Frazier* to *Miranda* waivers] can be squared with *Miranda* because the trickery concerned only the wisdom of exercising the rights of which the defendant had been warned, it still follows that there is an absolute prohibition upon any trickery which misleads the suspect as to the existence or dimension of any applicable rights or as to whether the waiver really is a waiver of those rights." LaFave, *supra*, § 6.9(c). The cases that have allowed waivers which were induced by police lies concerned lies about the evidence, not lies about the rights themselves. *See, e.g., Velasquez*, 885 F.2d at 1088 (holding that lie about co-defendant's statement concerning the crime did not invalidate waiver); *Shedelbower v. Estelle*, 885 F.2d 570, 572–74 (9th Cir.1989) (holding that lie about identification of suspect by victim did not render waiver invalid).

In cases in which the misstatements concerned *Miranda* rights themselves, courts have not found purported waivers to be valid. *See, e.g., Collazo v. Estelle*, 940 F.2d 411, 414, 417–18 (9th Cir.1991) (en banc) (holding that police statement, following suspect's request to talk to lawyer, that this was the "last chance to talk to us" and it "might be worse for you" rendered *Miranda* waiver and confession made after defendant re-initiated conversation involuntary); *United States v. Anderson*, 929 F.2d 96, 97–100 (2d Cir.1991) (holding that officer's statement that "this [is] the time to talk to us, because once you tell us you want an attorney we're not able to talk to you and as far as I[am] concerned, we probably would not go to the U.S. Attorney or anyone else to tell them how much [you] cooperated with us" was false and misleading and undermined the effect of the *Miranda* warnings).[3]

---

**3.** In *Machacek v. Hofbauer*, 213 F.3d 947 (6th Cir.2000), *cert. denied*, 531 U.S. 1089, 121 S.Ct. 808, 148 L.Ed.2d 694 (2001), the court

was confronted with a police statement implying that the suspect's signing of a waiver form

In *Soffar v. Johnson*, 237 F.3d 411 (5th Cir.2000), *petition for rehearing en banc granted*, 253 F.3d 227 (5th Cir.2001), the defendant asked the interrogating officer whether he should talk to a lawyer, to which the officer responded: " 'if you're guilty talk to the police, if you're innocent you should talk to a lawyer.' " *Id.* at 455. The defendant then asked " 'how do I get a lawyer?' ", *id.*, and the officer responded, " 'can you afford' " one? *Id.* The defendant then asked " 'how do I get a court appointed attorney, and how long will it take?' " *Id.* The officer stated that it could take as little as a day or as long as a month. *Id.* at 429, 455. The defendant then stated " 'well, then I guess I'm on my own[,]' " *id.* at 455, at which time the officer either failed to respond or said " 'yes, you are.' " *Id.* at 456.

The court held that by leading the defendant to believe that he did not have the right to an attorney unless he could pay for one, that it might take a month for an attorney to be appointed, and that in the mean time, he was on his own, the officer breached his "duty under *Miranda* ... to respond honestly and completely to [the petitioner's] questions regarding his rights, and not to undermine *Miranda* by misleading him into believing that he could not get a lawyer if he wanted one." *Id.* at 459, 86 S.Ct. 1602. Therefore, the defendant's *Miranda* waiver "was neither knowing, by virtue of [the officer's] misleading [the petitioner] as to the nature, extent, and applicability of his *Miranda* rights, nor voluntary, by virtue of the fact that [the petitioner's] waiver was obtained by trickery and deceit." *Id.*

## III. APPLICATION OF STANDARD TO FACTS

With these principles in mind, I turn to the facts of the present case. The record reveals that the following events occurred. Petitioner was in custody, and the officer wished to interrogate him. The officer gave petitioner the *Miranda* warnings. Petitioner asked the officer for counsel. The officer told petitioner that he could not obtain counsel for him at that point, and that an attorney would be assigned by the Public Defender after the district attorney issued charges. At the suppression hearing the officer also testified, incredibly, that he could not call an attorney because he had no access to a phone and could not leave the room. Petitioner told the officer that he would feel better having an attorney, that he did not want to get into any more trouble, but that he did want to talk to the officer.

The officer then said that he could not talk to petitioner because petitioner wanted an attorney. According to petitioner, the officer encouraged him to speak without an attorney by stating that it would look better to the district attorney if he spoke without hiding behind a lawyer. The officer did not contradict this assertion, and the trial court made no credibility determination or factual finding on the issue. The officer then sat in silence for several minutes after which petitioner initiated further communication, saying he wanted to talk now. The officer then asked if petitioner would waive his right to counsel; petitioner did so and confessed.

The questions raised by these facts are whether the officer violated petitioner's

---

meant only that he understood his rights, not that he was waiving them. While concluding that these statements were "less than appropriate," *id.* at 953, the court found that the officers did not treat the signature as a waiver and subsequently asked the suspect if he wished to waive his rights, which the suspect verbally did. *Id.* at 954. However, in dissent, Chief Judge Merritt concluded that he could not "sanction this classic violation of *Miranda*." *Id.* at 955 (Merritt, C.J., dissenting).

rights under *Edwards* by continuing to interrogate him after he requested counsel and whether petitioner validly waived his *Miranda* rights. *See Arizona v. Roberson*, 486 U.S. 675, 681, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *Edwards*, 451 U.S. at 486 n. 9, 101 S.Ct. 1880.

## A. Were Petitioner's Rights Under *Edwards* Violated?

■ I am troubled not only by the officer's false statement about when counsel could be appointed but also by his admitted delay in complying with the central tenet of *Edwards* —that when a suspect indicates that he wishes to deal with police through counsel interrogation must cease. Rather than leaving the room after petitioner made it clear that he wanted counsel, the officer instead sat there, apparently in silence. This action likely increased the pressure inherent in the custodial situation and prompted petitioner to speak.

The officer complied with *Edwards* only in the most technical sense. It is true that after petitioner requested counsel the officer did not continue to interrogate him, i.e., to ask questions or make statements likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Petitioner initiated further communication with the officer about the matter, and the officer procured a waiver of the right to counsel before resuming the interrogation.

However, the officer's conduct was hardly consistent with the spirit of *Edwards*. Assuming that he could not or would not affirmatively respond to petitioner's request for counsel, for whatever reason (he had no phone, he did not know that he could call the Public Defender, he did not know the phone number of the Public Defender, he did not want to help petitioner obtain counsel), he nevertheless should have immediately left the interrogation room.[4] Judges must be mindful of the pressures of custodial interrogation, and the compulsion to speak it creates. *Roberson*, 486 U.S. at 686, 108 S.Ct. 2093. An officer who sits in silence in the interrogation room with a suspect anxious to talk increases this compulsion. Petitioner's "spontaneous" re-initiation of communication might not have occurred had the officer more swiftly complied with *Edwards*.[5] Nevertheless, under the circumstances, the officer did not violate *Edwards* because he did not continue "interrogation" after the request for counsel, and his silence cannot be equated with trickery. *Spring*, 479 U.S. at 576, 107 S.Ct. 851.

## B. Validity of Petitioner's *Miranda* Waiver

■ The more difficult question is whether petitioner validly waived his right to counsel. The Supreme Court instructs that once a suspect indicates that he wishes to deal with police through counsel his subsequent waiver of counsel should be viewed with skepticism. *Roberson*, 486 U.S. at 681, 108 S.Ct. 2093 (citing *Michigan v. Mosley*, 423 U.S. 96, 110 n. 2, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (White, J., concurring)). Viewed in this light, I conclude that petitioner's waiver was involuntary. In making this determination, I consider the totality of the circumstances but recognize that "any evidence that the accused was threatened, tricked, or cajoled

---

4. I also note that the officer appears to have violated Wis.Stat. § 967.06, which states that when a person in custody requests counsel he or she "shall immediately be permitted to contact the authority for indigency determinations specified under s. 977.07(1)." The officer had an obligation under these circum-stances to allow petitioner to call the Public Defender.

5. The officer was clearly aware of *Edwards* as he used the magic words "initiate" or "reinitiate" multiple times during his testimony.

into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda,* 384 U.S. at 478, 86 S.Ct. 1602.

### 1. Characteristics of Petitioner

The record reveals that petitioner was 47 years old at the time he was interrogated. He had been arrested and read his rights before. The trial judge found that he was "fairly intelligent" and "made conscious choices which were his to make and so that it was a knowing and intelligent waiver." (Answer, Ex. J at 44.) This finding is not unreasonable in light of the evidence presented and is thus entitled to deference. 28 U.S.C. § 2254(d)(2). This factor favors a finding of voluntariness.

### 2. Conditions of the Interrogation

The record concerning the circumstances of the interrogation is frustratingly sparse. The interrogation occurred in a locked room in the Milwaukee County Criminal Justice Facility on June 2 at about 10:50 a.m. and was conducted by one officer. We do not know whether the officer was armed or if petitioner was shackled.

 However, we do know that petitioner was arrested on May 29 at about 10:30 p.m. and was not given a probable cause hearing until June 5. At the time he confessed petitioner had been in custody for about four and one-half days without a probable cause determination or initial appearance (at which he might have been provided with counsel), well beyond the presumptively acceptable forty-eight hours.[6] *See County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). When evaluating voluntariness, I may consider the length of detention as part of the totality

of the circumstances. *See Miranda,* 384 U.S. at 476, 86 S.Ct. 1602 (stating that "the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights"); *id.* at 508, 86 S.Ct. 1602 (Harlan, J., dissenting) (indicating that court may consider "length and illegality of detention" under due process voluntariness test); *see also United States v. Huerta,* 239 F.3d 865, 873 (7th Cir.2001). Given the "prolonged police custody," *Roberson,* 486 U.S. at 686, 108 S.Ct. 2093, to which petitioner was subjected, this factor favors a finding of involuntariness.

### 3. Conduct of the Officer

The critical factor is that petitioner's waiver was precipitated by the officer's false statement about whether a lawyer could be provided at the interrogation. The *Miranda* Court made it quite clear that waivers may not be procured by misleading statements, such as this. *See Miranda,* 384 U.S. at 478, 86 S.Ct. 1602.

Petitioner requested counsel "then and there, right now," in the officer's words. (Answer, Ex. J at 27:12) The officer misinformed petitioner that a lawyer could not be appointed until he was formally charged. Under Wisconsin law, this statement is patently false. The Public Defender can appoint counsel prior to the issuance of charges for an adult in custody after hours and on an emergency basis. Wis.Stat. §§ 977.05(4)(h) & 977.05(6)(c); Wis.Admin.Code §§ PD 2.01(1), 2.02(1), 2.03(2) ("The state public defender or county designee shall be available 24 hours per day including weekends and legal holidays.").

Moreover, under Wis.Stat. § 967.06 (emphasis added), a person in custody who,

---

**6.** It appears that petitioner spent some time in a hospital after his arrest, but the record does not reveal how long.

like petitioner, requests counsel "*shall* be immediately permitted to contact the authority for indigency determinations." Thus, the officer not only breached his "duty under *Miranda* . . . to respond honestly and completely to [petitioner's] questions regarding his rights, and not to undermine *Miranda* by misleading him into believing that he could not get a lawyer if he wanted one," *Soffar*, 237 F.3d at 459, he also violated state law concerning access to appointed counsel.

It is immaterial whether the officer intentionally misinformed petitioner or whether he actually believed that a lawyer could only be appointed after petitioner was charged. *Miranda* and *Edwards* "focus[ ] on the state of mind of the suspect and not of the police." *Roberson*, 486 U.S. at 687, 108 S.Ct. 2093; *see also New York v. Quarles*, 467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (holding that officer's motivation not relevant to application of "public safety" exception to *Miranda*); *Innis*, 446 U.S. at 301, 100 S.Ct. 1682 (stating that officer's subjective intent to incriminate is not determinative of whether "interrogation" occurred). Petitioner's decision to waive counsel was based on the impression that counsel was days away. If petitioner had known that counsel was minutes or hours rather than days away, he may have insisted that the officer call the Public Defender (or allow him to do so as required by section 967.06) prior to speaking. Petitioner might have stood on his request for counsel but was not given the opportunity to make this decision based on accurate information. Because the officer misled petitioner "as to the existence or dimensions" of his *Miranda* rights, LaFave, *supra*, at § 6.9(c), the waiver was involuntary.

## C. *Duckworth* is Inapposite

The state court of appeals relied upon *Duckworth* to sustain the waiver. *Duck-* *worth* does not apply in this case. The defendant there was given the following *Miranda* warning:

> Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. *You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.* You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. *We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.* If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering questions at any time until you've talked to a lawyer.

*Duckworth*, 492 U.S. at 198, 109 S.Ct. 2875 (alteration in original). After receiving these warnings, the defendant waived his rights and made an exculpatory statement. *Id.* About twenty-nine hours later the defendant was again interrogated, given fresh *Miranda* warnings (but without the "if and when you go to court" language), and confessed. *Id.* at 198–99, 109 S.Ct. 2875. Following a trial at which both statements were admitted, the defendant was convicted. *Id.* at 199, 109 S.Ct. 2875.

The Supreme Court rejected the defendant's claim that the "if and when you go to court" language was misleading and did not comply with *Miranda* for two reasons: "First, this instruction accurately described the procedure for the appointment of counsel in Indiana." *Id.* at 204, 109 S.Ct. 2875. "Second, *Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attor-

ney before and during questioning, and that an attorney would be appointed for him if he could not afford one.... If the police cannot provide appointed counsel, *Miranda* requires only that the police not question a suspect unless he waives his right to counsel." *Id.* The Court did not hold that it was permissible to mislead a suspect but rather found that the warning was not misleading because it accurately reflected Indiana law with respect to when a lawyer could be appointed.

The two critical factors upon which the *Duckworth* Court relied to sustain the waiver are glaringly absent here. First, the officer's statement did not accurately describe Wisconsin law. In Wisconsin, counsel can be appointed for uncharged suspects undergoing custodial interrogation. Wis.Stat. §§ 977.05(4)(h) & 977.05(4)(h); *see generally* 78 Wis.Op.Atty. Gen. 133, 1989 WL 505761, at * 1–2 (1989) (citing Wis.Stat. § 967.06; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Hanson*, 136 Wis.2d 195, 210, 401 N.W.2d 771 (1987)). Second, the officer could have provided appointed counsel. Indeed, under sections 967.06 and 977.05(6)(c), appointed attorneys in Wisconsin are (to borrow a phrase from *Duckworth*, 492 U.S at 204, 109 S.Ct. 2875), "producible on call." *See* Wis.Admin.Code § PD 2.03(2) ("The state public defender or county designee shall be available 24 hours per day including weekends and legal holidays."); *see also State v. Pultz*, 206 Wis.2d 112, 126 n. 10, 556

N.W.2d 708 (1996) ("Wis.Stat. §§ 967.06, 977.02 and 977.07 together provide for a prompt determination of indigency and appointment of a public defender."). Therefore, *Duckworth* may not be applied to the facts of this case.[7]

## D. Conclusion as to Constitutional Issue

Petitioner's waiver was procured as the direct result of a false statement by the officer that undermined the effect of the *Miranda* warnings. Petitioner clearly conveyed "his inability to cope with the pressures of custodial interrogation by requesting counsel." *Roberson*, 486 U.S. at 686, 108 S.Ct. 2093. The officer's false statement about when counsel could be obtained increased rather than decreased the pressures inherent in the interrogation room. Petitioner was anxious both to talk to the officer and to obtain a lawyer. The effect of the officer's false statement and his remaining in the interrogation room after petitioner asked for a lawyer was to encourage petitioner to initiate further conversation and then to forego his stated wish to be represented by counsel. The officer thus impermissibly enhanced the inherent pressure on petitioner to waive his right to counsel.

For the foregoing reasons I conclude that petitioner's *Miranda* waiver was involuntary. A valid waiver cannot be induced by misinformation that distorts the meaning of the *Miranda* rights. Nor do *Frazier* and its progeny provide a basis for validating the interrogation.[8] The admis-

---

7. *United States v. Wesela*, 223 F.3d 656 (7th Cir.2000), *cert. denied*, 531 U.S. 1174, 121 S.Ct. 1145, 148 L.Ed.2d 1008 (2001), does not suggest a different result. There, the court in dicta assumed that *Duckworth* applied when the defendant asked, "Could I get a lawyer?" and the detective responded that he could not call one for him. The defendant then stated, "I can't call one either," and quickly proceeded to describe the events leading to his arrest. *Id.* at 661. In *Wesela,* there was no evidence

that the officer misled the suspect about when counsel could be appointed. Officers are not required to produce lawyers for suspects, and ·*Miranda* does not require that lawyers be present in police stations. What it does require is that police provide accurate information so that suspects can make free choices.

8. In its decision, the state court of appeals cited several cases aside from *Frazier* in support of the proposition that trickery is allowed in the waiver process. It referred to *State v.*

sion of petitioner's confession into evidence was constitutional error.

 Because officers are not required to obtain lawyers for suspects, and *Miranda* does not require the presence of stationhouse lawyers, the question arises: What is an officer's obligation when, as here, he is asked by a suspect undergoing custodial interrogation to provide counsel? The answer is simple. The officer is not obligated to call a lawyer,[9] and he need not cite chapter and verse of the state statutes and regulations concerning appointment of counsel. But he may not provide false or misleading information concerning the availability of counsel. If state law provides that counsel may be appointed on an emergency basis, the officer may not misinform the suspect that he cannot obtain appointed counsel until after he goes to court. If state law provides that suspects must be allowed to contact the Public Defender upon a request for counsel, the officer may not tell the suspect that this is not an option. In sum, the officer may not make inaccurate statements that distort the suspect's choice. Moreover, if the suspect stands on his right to counsel, and the officer chooses not to or is unable to procure counsel, interrogation must immediately cease.

As my former colleague Judge Myron Gordon wrote:

> Custodial interrogation is inherently coercive and is therefore presumptively improper. Law enforcement officials have no right to question a suspect in custody. On the contrary, suspects have a constitutional right *not* to be questioned. It is not the petitioner's burden to show that he asserted his right to be free from interrogation. Rather, it is the state's burden to justify the custodial interrogation by demonstrating that the petitioner waived his right.

*Woods,* 605 F.Supp. at 895–96. In this case, petitioner attempted to stand on his rights but was misled and pressured into waiving them. Thus his waiver was constitutionally invalid.

## IV. SECTION 2254(d)(1) ANALYSIS

Petitioner applied for habeas relief on December 19, 2000. Thus review of the petition is governed by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, a federal court may grant a state

---

*Woods,* 117 Wis.2d 701, 725, 345 N.W.2d 457 (1984), where the court cited *Frazier* for the proposition that police lies do not render per se invalid a *Miranda* waiver. *Jackson,* 229 Wis.2d at 340, 600 N.W.2d 39. However, as the *Woods* court conceded, *Frazier* concerned the voluntariness of the confession, not of the waiver of the right to remain silent. *Woods,* 117 Wis.2d at 725, 345 N.W.2d 457. More importantly, a judge of this district court granted habeas relief to Woods based upon an egregious violation of his *Miranda* and Fifth Amendment rights, including the use of trickery to compel his confession. *Woods v. Clusen,* 605 F.Supp. 890 (E.D.Wis.1985), *aff'd,* 794 F.2d 293 (7th Cir.1986). *Woods* thus hardly supports the majority's view. The court of appeals also cited *State v. Fehrenbach,* 118 Wis.2d 65, 66, 347 N.W.2d 379 (Ct.App.1984), for the proposition that *Frazier*

could salvage petitioner's waiver. *Jackson,* 229 Wis.2d at 340, 600 N.W.2d 39. However, that case concerned the use of police deception to get the defendant to come to the police station, where he was questioned and made an incriminating statement. The court there cited *Frazier* for the proposition that deceit, while relevant, does not in itself render a statement involuntary. *Fehrenbach,* 118 Wis.2d at 66, 347 N.W.2d 379. The issue of *Miranda* waiver never came up. *Fehrenbach* does nothing to bolster the majority's position.

9. Of course, an officer may attempt to procure counsel if he is so inclined, and counsel must be provided if a suspect asks for a lawyer and the officer wants to continue the interrogation.

prisoner's application for a writ of habeas corpus only if the adjudication of the prisoner's claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1).

"A state court decision is 'contrary to' Supreme Court precedent 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or 'if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that [reached by the Supreme Court].'" *Dixon v. Snyder*, 266 F.3d 693, 700 (7th Cir.2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (alteration in original).

"An 'unreasonable application' of Supreme Court precedent occurs when 'the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case' or 'if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id.* (quoting *Williams*, 529 U.S. at 407, 120 S.Ct. 1495) (alteration in original).

▌ I have concluded that petitioner's rights under *Miranda* were violated and that the state court should have suppressed his confession. However, "[i]n order to issue a writ of habeas corpus, the state court decision must be both 'incorrect *and* unreasonable.'" *Id.* (quoting *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir.2000)); *see also Williams*, 529 U.S. at 411, 120 S.Ct. 1495 (holding that the term "unreasonable" is not synonymous with "erroneous" or "incorrect"). The state court decision must be "objectively unreasonable" in order for me to

issue the writ. *Williams*, 529 U.S. at 409, 120 S.Ct. 1495. Because the determination is an objective one, I do not simply survey the nation's jurists, rejecting the petition if "at least one ... has applied the relevant federal law in the same manner the state court did." *Id.* at 410, 120 S.Ct. 1495.

The state court of appeals correctly recognized that *Miranda* and *Edwards* were the controlling Supreme Court authorities on the issue presented. *Jackson*, 229 Wis.2d at 337, 600 N.W.2d 39. However, the court then extended two other Supreme Court decisions—*Duckworth* and *Frazier*—to cover the facts of this case.

The court of appeals held that under *Duckworth* "the detective's inaccurate assertion was not a violation of the *Miranda* prophylactic rule [because] *Duckworth* recognized that in the real world, rigid, verbatim adherence to ideal *Miranda* warnings is not required." *Id.* at 338, 600 N.W.2d 39. However, the court ignored the fact that the Supreme Court has always held that *Miranda* waivers may not be procured by false statements. *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602. The *Duckworth* Court was not confronted with an "inaccurate assertion," *Jackson*, 229 Wis.2d at 338, 600 N.W.2d 39, because in *Duckworth* the officer's statements about the availability of appointed counsel were true. *Duckworth*, 492 U.S. at 204, 109 S.Ct. 2875.

The court of appeals acknowledged this but asserted that under *Duckworth* false statements by an officer do not undermine *Miranda* warnings as long as the officer told the suspect that he did not have to talk until he had a lawyer. *Jackson*, 229 Wis.2d at 339 n. 2, 600 N.W.2d 39. However, this statement misreads *Duckworth*. If the state appeals court were correct, the *Duckworth* Court would not have needed to state (as the first supporting reason for

its decision) that the instruction was accurate under Indiana law. More importantly, under the state court's reading *Duckworth* means only that an officer must "properly" read the *Miranda* warnings and then can make inaccurate statements that undermine or negate the effect of those warnings. If this reading is correct the effect of *Duckworth* would have been to overrule *sub silentio* the statements in *Miranda* and subsequent cases that waiver may not be procured by false statements. This cannot have been the result. (If it was, it has escaped the notice of both courts and commentators.) In sum, *Duckworth* cannot reasonably be read as allowing *Miranda* waivers to be elicited by false statements following an "accurate" recitation of the rights. The court of appeals decision to extend *Duckworth* was unreasonable.

> The court of appeals also stated that there is neither evidence nor an offer of proof in the record that the detective *knew* he could have both left Jackson alone to make the call[10] and gotten the public defender's office to implement its emergency-appointment procedure. We will not circumvent *Duckworth* merely because an officer makes an inadvertent comment that later detailed analysis indicates may have been mistaken.

*Id.* at 339, 600 N.W.2d 39. This statement also unreasonably applies Supreme Court precedent because the officer's knowledge and state of mind are irrelevant when analyzing a *Miranda/Edwards* waiver. *Roberson*, 486 U.S. at 687, 108 S.Ct. 2093; *Innis*, 446 U.S. at 301, 100 S.Ct. 1682.

Finally, the court of appeals extended *Frazier* to this case, stating that even a deliberate misstatement would be just one factor in the totality of the circumstances. *Jackson*, 229 Wis.2d at 340, 600 N.W.2d 39. It is unreasonable to extend *Frazier* from its proper context—evaluation of the voluntariness of confessions—to this context—evaluation of the voluntariness of *Miranda* waivers. The Supreme Court has never held that deception is but one factor in evaluating a waiver; to the contrary, the Court has over and again forbidden false statements in the waiver process. This was also an unreasonable extension of Supreme Court precedent.

Petitioner's waiver was procured by a false statement that distorted the meaning of the *Miranda* warnings, leading him to believe that he could not cooperate with the interrogating officer while maintaining his request for counsel. *Miranda* and its progeny make quite clear that this cannot stand. The court of appeals decision affirming admission of petitioner's confession was the result of an unreasonable extension and application of clearly established Supreme Court precedent.

## CONCLUSION

**FOR THE FOREGOING REASONS,** the petitioner's petition for a writ of habeas corpus is **GRANTED** and it is **ORDERED** that petitioner be released from custody unless respondent grants him a new trial within 120 days from the issuance of this opinion.

---

**10.** This was an apparent reference to the officer's testimony that he had no way to leave the room where he was interrogating petitioner to call an attorney. This was, quite frankly, an absurd statement. One would think that police officers are able to leave the interrogation rooms at the Criminal Justice Facility at their discretion. It would indeed be unfortunate if they were required to wait in locked rooms with the suspects until the suspects went to court or made bail.